**In re Claude EMERY, Debtor.**

**CITIBANK, N.A., Plaintiff,**

v.

**Claude EMERY, Defendant.**

**Bankruptcy No. 191–13139–352.**
**Adv. No. 192–1642–352.**

United States Bankruptcy Court,
E.D. New York.

Aug. 19, 1994.

Richard K. Bernstein, Richard K. Bernstein Associates, New York City, for debtor/defendant.

Robert M. Brill, argued and on the brief, Marc Lebowitz, on the brief, Zeichner Ellman & Krause, New York City, for plaintiff.

## DECISION

MARVIN A. HOLLAND, Bankruptcy Judge:

The Plaintiff, Citibank, N.A. (hereinafter "Citibank"), commenced an adversary proceeding against the debtor/defendant, Claude Emery (hereinafter "Debtor/Defendant"), to revoke the Debtor/Defendant's discharge pursuant to 11 U.S.C. § 727(d)(1) and Bankruptcy Rules 7001(1) and (4), on the grounds that the Debtor/Defendant procured his discharge through fraud. (Fed.R.Bankr.P. is used to indicate the Federal Rules of Bankruptcy Procedure and Fed.R.Civ.P. is used to indicate the Federal Rules of Civil Procedure. Pursuant to Fed.R.Civ.P. 12(b)(6), made applicable to adversary proceedings in bankruptcy by Fed.R.Bankr.P. 7012(b), the Debtor/Defendant has moved to dismiss Citibank's Second Amended Complaint (hereinafter "Second Complaint") for failure to state a claim upon which relief can be granted.

The motion is granted.

## JURISDICTION

This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(J) of which we have jurisdiction under 28 U.S.C. § 1334(b), 28 U.S.C. § 157(a), and the Order of Referral of Matters to Bankruptcy Judges of this district.

## PROCEDURAL HISTORY

On May 16, 1991 (hereinafter "Filing Date"), the Debtor/Defendant filed a voluntary petition (hereinafter "Petition") for relief under Chapter 7 of the Bankruptcy Code (11 U.S.C. § 101 *et seq.*). September 10, 1991 (hereinafter "Discharge Bar Date"), was fixed as the last day for filing complaints to object to the Debtor/Defendant's discharge pursuant to 11 U.S.C. § 727(a) or to determine the dischargeability of a debt, pursuant to 11 U.S.C. § 523. No complaints were filed pursuant to 11 U.S.C. §§ 727(a) and 523.

On October 9, 1991, Citibank, a scheduled creditor, filed a proof of claim asserting a contractual claim in the amount of $8,854.24, a fraud claim in the amount of $5,646,780.50, and a Racketeer Influenced and Corrupt Or-

ganizations Act claim in the amount of $16,-479,780.50.

On November 29, 1991 (hereinafter "Discharge Date") the Debtor/Defendant was granted a discharge pursuant to 11 U.S.C. § 727(a).

On November 25, 1992, Citibank filed a complaint (hereinafter "First Complaint") to revoke the Debtor/Defendant's discharge pursuant to 11 U.S.C. § 727(d)(1). Pursuant to Fed.R.Civ.P. 12(b)(6), the Debtor/Defendant moved to dismiss the First Complaint on the grounds that it failed to state a claim upon which relief can be granted.

On January 3, 1993, a hearing was held at which this Court dismissed the First Complaint pursuant to Fed.R.Civ.P. 9(b), for failure to plead fraud with particularity. Leave to replead was granted.

On March 5, 1993, Citibank filed the Second Complaint and the Debtor/Defendant brought the instant motion to dismiss the Second Complaint, pursuant to Fed.R.Civ.P. 12(b)(6).

On May 12, 1993, a hearing on the instant motion was held; decision was reserved.

## THE SECOND COMPLAINT

### BACKGROUND

Citibank alleges that: (i) in the spring of 1990 it became aware, in part as a result of an investigation by the New York State Attorney General, that it had been the probable victim of a racketeering enterprise (hereinafter "Racketeering Enterprise"), the principles of which were Florin Vasilescu (hereinafter "Vasilescu"), several corporations including an entity or entities with the name F.A.V. (hereinafter "FAV") and several corporations that make up the Culinary Products Group (hereinafter "Culinary Products"), (ii) commencing in 1982 and continuing through 1984–85, the Racketeering Enterprise perpetrated a fraud on Citibank by preparing and submitting to Citibank, mortgage loan applications and contracts of sale containing materially-false information, (iii) relying on the false statements and misrepresentations in the mortgage loan applications, Citibank granted loans for each mortgage loan application submitted to it, and (iv) in or about early 1990, the loans began to go into default causing Citibank to incur losses of up to $5,646,780.50.

Citibank further alleges that it eventually learned that the Racketeering Enterprise had been organized and led by Vasilescu with the Debtor/Defendant's assistance. Specifically, Citibank claims that the Debtor/Defendant assisted Vasilescu in the preparation and submission of the alleged false and misleading mortgage loan applications and contracts of sale that were submitted to Citibank.

## THE BANKRUPTCY CASE

Citibank maintains that throughout this case, the Debtor/Defendant committed fraud by making false statements with respect to his alleged involvement with Vasilescu and the entities that comprised the Racketeering Enterprise. The alleged purpose of the false statements was to prevent Citibank from discovering information that would have enabled it to timely object to the Debtor/Defendant's discharge or to the dischargeability of its claim.

According to Citibank, the Debtor/Defendant's false statements began when he answered: (i) "N/A", in response to question "1.d" on his Statement of Financial Affairs (hereinafter "Statement of Financial Affairs"), which asked about businesses which the Debtor/Defendant had been involved in during the six years preceding the filing and which required the Debtor/Defendant to list the names of partners, joint venturers or other associates, the nature of the business and the period for which it was carried on, and (ii) "none" at line "u" of Schedule B–2 (hereinafter "Schedule B–2") which asked for any interests that the Debtor/Defendant held in partnerships.

Thereafter, the Debtor/Defendant is alleged to have made false statements at an adjourned § 341 Meeting of creditors (hereinafter "341 Meeting"), held on August 8, 1991. At the 341 Meeting, the Debtor/Defendant indicated under oath that he had never carried on business during the six years preceding the Filing Date, with the exception of two corporations known as 39–

06 Owners Corp. and Neuhaus (USA), Inc.[1] In particular, the Debtor/Defendant claimed never to have conducted business in connection with Vasilescu, FAV or Culinary Products. Moreover, when specifically questioned by Citibank's counsel as to whether Vasilescu had any business partners, the Debtor/Defendant answered "[a]s far as I know, I am not sure."

Citibank asserts that following the 341 Meeting, the Debtor/Defendant further continued his fraudulent conduct at an examination of the Debtor/Defendant conducted on November 18, 1991, pursuant to Bankruptcy Rule 2004 (hereinafter "Rule 2004 Examination"). At the Rule 2004 Examination, the Debtor/Defendant again testified under oath that he: (i) had never been Vasilescu's partner; (ii) had never been involved in any business transactions with Vasilescu, other than 39–06 Owners Corp., and (iii) had never been a partner or involved in FAV.

The Debtor/Defendant's testimony and statements, set forth above, form the bulk of Citibank's allegations regarding the Debtor/Defendant's alleged fraud.[2] Citibank alleges that such testimony and statements were not only false, but were made with the intention of preventing it from discovering information that would have enabled it to timely object to the Debtor/Defendant's discharge or to the dischargeability of its claim.

Specifically, Citibank claims that within the six years preceding the Filing Date, the Debtor/Defendant had carried on business with Vasilescu, FAV, Culinary Products and others. However, Citibank maintains that as a result of the Debtor/Defendant's false statements throughout this case, it did not, and could not, learn the true state of affairs regarding the Debtor/Defendant's business relationships until it was too late to file a timely objection to discharge or dischargeability of debt.

The Second Complaint reveals that the roots of Citibank's knowledge of the Debtor/Defendant's involvement with Vasilescu and the Racketeering Enterprise began to surface in August, 1991. In both June and early July, 1991, the Debtor/Defendant's attorney voluntarily agreed to produce documents to Citibank (hereinafter "Voluntary Production").[3] The Voluntary Production was to have been made in two parts: (1) on July 29, 1991, documents pertaining to Vasilescu were to be produced and (2) on August 5, 1991, other documents were to have been produced. On July 26, 1991, the Debtor/Defendant provided an initial set of documents to Citibank and on August 29, 1991, twenty-four (24) days after Debtor/Defendant's counsel originally promised they would be produced, the Debtor/Defendant provided additional documents to Citibank.

1. According to Citibank, Neuhaus (USA), Inc. was a company that the Debtor was involved in and which maintained documents and records related to the Racketeering Enterprise, under the direction and control of the Debtor. In addition, it is alleged that 39–06 Owners Corp. was part of the Racketeering Enterprise.

2. *See* footnote 3.

3. In addition to the Debtor/Defendant's alleged false statements, Citibank alleges that the Debtor/Defendant committed fraud with respect to his production of documents in this case to Citibank (hereinafter "Production Fraud"). In addition to the Voluntary Production, Citibank, in conjunction with the Rule 2004 Examination, received documents from the Debtor/Defendant, pursuant to a subpoena *duces tecum* served on the Debtor/Defendant. Citibank maintains that in both instances, the Debtor/Defendant intentionally omitted documents which referenced his business relationships with Vasilescu. Citibank alleges that it learned at the Rule 2004 Examina-

tion, that the Debtor/Defendant had produced documents to the Trustee that should have been, but were not, produced to Citibank. However, for purposes of this decision, this Court need not focus on the Production Fraud because our analysis with respect to the Debtor/Defendant's fraud in making false statements applies equally to the Production Fraud. Based on our holding with respect to the alleged false statements, there is no need to determine whether the Debtor/Defendant's Production Fraud would have been additional grounds for finding that the Debtor/Defendant procured his discharge through fraud. Thus, the only possible relevance that the Production Fraud would have in this case would be with respect to Citibank's knowledge concerning the Debtor/Defendant's fraud in procuring his discharge. However, our analysis concerning Citibank's knowledge of the Debtor/Defendant's fraud in making false statements, applies equally to Citibank's knowledge concerning the Production Fraud, and therefore, our decision herein would be the same whether or not we focus upon the production fraud.

According to Citibank, "[u]pon review of the documents produced, [it] began to suspect that the debtor may have had some business dealings with Vasilescu and FAV, and may have carried on some business in the [six years immediately preceding the Filing Date], in conjunction with Mr. Vasilescu, FAV, and Culinary Products." Compl. at ¶ 41. However, Citibank maintains that the Voluntary Production "provided no hard evidence that either the [Statement of Financial Affairs or Schedule B–2] was untrue, misleading, and incomplete, or that the Debtor's testimony at the 341 Meeting was untrue, misleading and incomplete." Compl. at ¶ 42. Thus, according to Citibank, "the information produced was insufficient at that time for [it] to have grounds beyond skeletal inference to file a Dischargeability complaint or object to Discharge." Compl. at ¶ 43.

After reviewing the documents produced pursuant to the Voluntary Production, Citibank asked Debtor/Defendant's counsel if he would agree to an extension of Citibank's time to object to discharge and dischargeability of debt. The Debtor/Defendant would not agree to such extension. Citibank did not seek an extension from this Court.

Following the Voluntary Production and the Discharge Bar Date, Citibank maintains that it continued to investigate the Racketeering Enterprise and in particular, Vasilescu. As part of its investigation, Citibank reviewed certain documents, including "... documents in files of the New York State Supreme Court, as well as those possessed by counsel of record in certain New York State court cases, including affidavits of Vasilescu and the Debtor...." Compl. at ¶ 54.

Among the documents that Citibank reviewed, were sworn statements that the Debtor/Defendant had made on April 14, 1989 and April 29, 1989 (hereinafter "1989 Affidavits") in connection with a New York State court action entitled *In the Matter of Florin Vasilescu for the Dissolution of Neuhaus, (USA), Inc.* According to Citibank, the Debtor/Defendant, among other things, swore in the 1989 Affidavits that he was: (i) a partner of Vasilescu in Vasilescu's real estate businesses and holdings, (ii) a partner

of Vasilescu in FAV, and (iii) an owner with Vasilescu of the Culinary Products Group.

Thus, based on its investigation after the Discharge Bar Date, and in particular upon its discovery of the 1989 Affidavits, Citibank maintains that it learned for the first time sufficient facts to indicate that Debtor/Defendant had likely participated in the Racketeering Enterprise and made material misrepresentations and omissions in the Statement of Affairs, Schedule B–2, and at the 341 Meeting. Compl. at ¶ 55.

Moreover, Citibank acknowledges that the Debtor/Defendant's Rule 2004 Examination and Citibank's discovery of the 1989 Affidavits "... confirmed that Citibank had grounds for objecting to Discharge...." Compl. at ¶ 79.

### DISCUSSION

■ The Debtor/Defendant has moved to dismiss the Second Complaint for failure to state a claim upon which relief can be granted under 11 U.S.C. § 727(d). Fed.R.Civ.P. 12(b)(6), made applicable to bankruptcy proceedings by Fed.R.Bankr.P. 7012(b), provides for dismissal of a complaint "for failure to state a claim upon which relief can be granted." A motion to dismiss under Fed. R.Civ.P. 12(b)(6) tests only the legal sufficiency of the complaint and is not designed to assess the factual basis of a claim for relief. *Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir.1980). The issue on a Fed.R.Civ.P. 12(b)(6) motion to dismiss is not whether the claimant is likely to prevail, but whether the claimant is entitled to offer evidence in support of his claims. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974).

In adjudicating the instant motion to dismiss, the Second Complaint must be construed in the light most favorable to the Citibank and all Citibank's allegations are assumed to be true. *See, e.g., In re Berman*, 100 B.R. 640, 643 (Bankr.E.D.N.Y.1989). In addition, dismissal is proper only if it is clear that no relief could be proved consistent with the allegations. *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232–33, 81 L.Ed.2d 59 (1984); *Conley v. Gibson*, 355

U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957).

Section 727(d) of the Bankruptcy Code provides in relevant part:

> (d) On request of … a creditor … and after notice and a hearing, the court shall revoke a discharge granted under subsection (a) of this section if—
>
> (1) such discharge was obtained through the fraud of the debtor, and the requesting party *did not know of such fraud until after the granting of such discharge.* [emphasis added].

11 U.S.C. § 727(d).

■ Thus, to state a claim upon which relief can be granted under 11 U.S.C. § 727(d), the Second Complaint must allege that: (1) the Debtor/Defendant procured his discharge through fraud, and (2) Citibank did not know of such fraud until after the Discharge Date. We will address each of these elements separately.

### THE DEBTOR/DEFENDANT'S ALLEGED FRAUD IN OBTAINING HIS DISCHARGE

■ The Second Complaint refers to two separate and distinct frauds allegedly committed by the Debtor/Defendant. The first fraud (hereinafter "Racketeering Fraud") is irrelevant to this decision; it is the fraud that the Debtor/Defendant allegedly committed, pre-petition, as part of the Racketeering Enterprise. The Racketeering Fraud is a fraud which generated the debt owed to Citibank. For purposes of 11 U.S.C. § 727(d), the fraud necessary to revoke discharge must be a fraud upon either the court or the entire creditor body. A fraud committed only upon the plaintiff will not suffice to revoke a discharge. *In re Jones,* 71 B.R. 682, 684 (S.D.Ill.1987). Moreover, the fraud referred to in 11 U.S.C. § 727(d) is by definition a post-petition fraud rather than a pre-petition deception which might constitute grounds to object to dischargeability under 11 U.S.C. § 523. Accordingly, we need only address post-petition fraud.

■ Allegations of lying in the filed Schedules and Statement of Affairs, and lying at both the 341 Meeting and the Rule 2004 Examination, satisfy the requirement of alleging a post-petition fraud. *See, e.g., In re Topper,* 85 B.R. 167, 169 (Bankr.S.D.Fla. 1988) (the debtor's failure to disclose his interest in a corporation on his Statement of Financial Affairs and Schedules "constitute[d] a fraud upon the creditors and the Court").

■ Pursuant to Fed.R.Bankr.P. 7009, which incorporates Fed.R.Civ.P. 9(b), fraud must be pleaded with particularity. Where, as here, an action is brought under 11 U.S.C. § 727(d)(1), the requirements for pleading fraud with particularity are satisfied if the plaintiff's complaint sets forth the time, place and contents of the false representation, the identity of the party making the false statement, and the consequences thereof. *See In re Edmunds,* 924 F.2d 176 (10th Cir.1991); *In re Jones,* 71 B.R. 682, 683 (S.D.Ill.1987).

Citibank has satisfied Fed.R.Bankr.P. 7009's requirement of pleading fraud with particularity. The Second Complaint sets forth, in detail, the Debtor/Defendant's alleged fraudulent statements made in this case. In addition, Citibank alleges that such statements were false and that its reliance on the statements prevented it from commencing a timely action under 11 U.S.C. §§ 727(a) or 523. Finally, Citibank alleges that the Debtor/Defendant obtained a discharge which he otherwise would not have received had this Court been aware of the alleged false statements.

Having determined that Citibank has alleged fraud with the required particularity, we must determine whether Citibank has alleged that the Debtor/Defendant's discharge was obtained through such fraud. "In order to have a discharge revoked for reasons of fraud the debtor must have committed a fraud in fact that if known to the court prior to discharge would have barred the discharge." *In re Peli,* 31 B.R. 952 (Bankr.E.D.N.Y.1983); *see also In re Edmunds,* 924 F.2d at 180. By definition, therefore, the fraud must have been committed prior to the discharge bar date.[4]

---

**4.** If fraud is committed by a debtor after the discharge bar date, such fraud could not be said

Accordingly, to revoke a discharge under 11 U.S.C. § 727(d)(1), we must find that fraud was committed prior to the Discharge Bar Date and that the Debtor/Defendant's discharge would have been denied under 11 U.S.C. § 727(a) if this Court had been made aware of the fraud prior to granting the discharge. *In re Peli*, 31 B.R. 952.

Thus, the Second Complaint must allege that the fraud committed by the Debtor/Defendant would have satisfied one of the grounds under 11 U.S.C. § 727(a) for denying discharge.[5]

Pursuant to 11 U.S.C. § 727(a)(4)[6], a discharge will be denied if an objecting party can prove that:

(1) the debtor made a statement under oath;

(2) the statement was false;

(3) the debtor knew the statement was false;

(4) the debtor made the statement with fraudulent intent; and

(5) the statement related materially to the bankruptcy case.

*In re Frommann*, 153 B.R. 113, 118 (Bankr.E.D.N.Y.1993); *In re Sapru*, 127 B.R. 306, 314 (Bankr.E.D.N.Y.1991); *In re Kelly*, 135 B.R. 459, 461 (Bankr.S.D.N.Y.1992); *In re Arcuri*, 116 B.R. 873, 880 (Bankr.S.D.N.Y. 1990).

In this case, the Second Complaint alleges all of the elements for maintaining an action to deny discharge under 11 U.S.C. § 727(a)(4): (i) that the Debtor/Defendant signed the Statement of Financial Affairs and Schedule B–2 under the penalty of perjury and testified under oath at the 341 Meeting, (ii) the Debtor/Defendant's answers in the Statement of Financial Affairs and Schedule B–2 and at the 341 Meeting were false, (iii) the Debtor/Defendant knew such answers were false, (iv) the Debtor/Defendant made the false statements to prevent Citibank from discovering facts which would have enabled Citibank to maintain an action under 11 U.S.C. §§ 727 or 523[7], and (v) the false statements related materially to this case because they concerned the discovery of the Debtor/Defendant's business dealings. *See In re Sapru*, 127 B.R. at 315 ( [t]he

to have helped a debtor procure or obtain a discharge because as of the expiration of the discharge bar date (in cases where no timely objections to discharge are filed), the debtor is automatically entitled to a discharge. Thus, once the discharge bar date expires, any fraud committed after such date cannot have any causal relationship to the debtor's obtaining a discharge. Accordingly, for purposes of this decision, the Debtor's alleged fraud at the Rule 2004 Examination cannot be deemed fraud in obtaining discharge.

5. Pursuant to 11 U.S.C. § 727(a), a debtor will be denied discharge if he (a) intentionally makes fraudulent transfers, 11 U.S.C. § 727(a)(2); (b) destroys or conceals without justification pertinent business records, § 727(a)(3); (c) lies or makes bribes in connection with the bankruptcy case, § 727(a)(4); (d) fails to explain satisfactorily any deficiency of assets, § 727(a)(5); or (e) refuses to obey a lawful court order, § 727(a)(6). In addition, such activities in conjunction with another bankruptcy case involving an insider will result in a similar penalty, § 727(a)(7). Finally, 11 U.S.C. §§ 727(a)(8) and (a)(9) provide, with several qualifications, for a six-year bar on the reuse of bankruptcy to discharge debts.

6. Section 727(a)(4) of the Bankruptcy Code provides in relevant part:
(a) The court shall grant the debtor a discharge, *unless*

(4) the debtor knowingly and fraudulently, in or in connection with the case—
(a) made a *false oath* or account. [emphasis added].

7. In order to sustain an objection to discharge under 11 U.S.C. § 727(a)(4), the objecting party must establish that the debtor knowingly and fraudulently made a false oath. As direct evidence of fraudulent intent is rarely available, a court may infer fraudulent intent from the facts of the case. *See, e.g., In re Kelly*, 135 B.R. 459, 461 (Bankr.S.D.N.Y.1992) (and cases cited therein). In this case, this Court must accept as true, Citibank's allegation that the Debtor/Defendant's failure to acknowledge his business relationship with Vasilescu was intended to prevent Citibank from discovering facts which would have enabled Citibank to object to the Debtor's discharge or to the dischargeability of its claim. Accordingly, the Second Complaint sufficiently alleges that the D/D's false statements in this case were made with fraudulent intent. In addition, this Court notes that when the Debtor/Defendant was confronted with the 1989 Affidavits at the Rule 2004 Examination, he failed to explain the inconsistencies between the 1989 Affidavits and his answers throughout this case. *See In re Mascolo*, 505 F.2d 274, 276 (1st Cir.1974) ("The trier of fact *may infer fraudulent intent from an unexplained false statement*").

subject matter of a false oath is 'material' . . . if it bears a relationship to the debtor's business transactions or . . . concerns . . . business dealings").

Accordingly, the fraud alleged in the Second Complaint would have satisfied one of the grounds under 11 U.S.C. § 727(a) for denying discharge. Stated differently, if this Court had been aware of the Debtor/Defendant's alleged fraud in filing false statements or making false statements under oath at the 341 Meeting through the timely filing of an appropriate adversary proceeding, there would have been sufficient grounds to deny discharge. *See In re Sapru*, 127 B.R. at 314 (*quoting, In re Bailey*, 53 B.R. 732, 735 (Bankr.W.D.Ky.1985) ("A false oath must relate to a matter and may consist of (1) a false statement or omission in the debtor's schedules or (2) a false statement by the debtor at an examination during the course of the proceedings")); *In re Frommann*, 153 B.R. at 118, 119 ("A false oath sufficient to justify the denial of a discharge pursuant to § 727(a)(4)(A) includes '(1) a false statement or omission in the debtor's schedules or (2) a false statement by the debtor at an examination during the course of the proceedings' ").

Thus, Citibank has satisfied its initial burden of alleging that the Debtor/Defendant obtained his discharge through fraud.[8]

### CITIBANK'S KNOWLEDGE OF THE DEBTOR/DEFENDANT'S FRAUD

As set forth above, to state a claim upon which relief can be granted under 11 U.S.C.

§ 727(d)(1), the party requesting revocation must allege that it did not know of the debtor's fraud until after the granting of the Debtor's discharge. *See, e.g., In re Puente*, 49 B.R. 966 (Bankr.W.D.N.Y.1985) ("[w]here the requesting party fails to sustain its burden of proving that it lacked knowledge of the fraud prior to the granting of the discharge, the cause of action should be denied").[9]

Paragraph 79 of the Second Complaint (hereinafter "Paragraph 79") provides:

> [t]he Debtor's 2004 Examination and Citibank's discovery of the 1989 Affidavits after the Discharge Bar Date, while investigating Florin Vasilescu, *confirmed that Citibank had grounds for objecting to Discharge* and Dischargeability . . . [emphasis added].

As noted above, the Rule 2004 Examination was conducted on November 18, 1991. In addition, Citibank's discovery of the 1989 Affidavits had to precede November 18, 1991 because Citibank had the 1989 Affidavits at the Rule 2004 Examination. Accordingly, *Paragraph 79 reveals that Citibank confirmed that it had "grounds for objecting to Discharge" as of November 18, 1991, or eleven (11) days prior to the Discharge Date of November 29, 1991.*

Moreover, assuming as we have done throughout this decision that the allegations in the Second Complaint are true, the "grounds for objecting to Discharge" alluded

---

**8.** *See In re Peli*, 31 B.R. at 955 ("In order to have a discharge revoked for reasons of fraud the debtor must have committed a fraud in fact that if known to the court prior to discharge would have barred the discharge . . . [s]uch fraud would include (1) the making of a false oath . . . or (2) a false statement at an examination during the course of the proceedings"); *In re Topper*, 85 B.R. 167, 169 (Bankr.S.D.Fla.1988) (the court found that the debtor, by failing to disclose his interest in a corporation on his Statement of Affairs, "intentionally obscured information and thus obtained his discharge by fraud . . . [h]ad the true state of affairs been known prior to discharge, he would not have been entitled to a discharge . . ."); *In re Stein*, 102 B.R. 363, 366 (Bankr.S.D.N.Y.1989), (the court held that "[a] discharge which was procured by the debtor's fraud . . . in filing false schedules may be revoked

pursuant to 11 U.S.C. section 727(d)(1)"); *In re Arianoutsos*, 116 B.R. 116, 117 (Bankr.N.D.Ill. 1990) ("A discharge obtained through the debtor's fraud in filing false schedules can be revoked under [11 U.S.C. § 727(d) ]").

**9.** It has been held that the party requesting revocation of discharge must prove not only that it did not know, but also that it could not have known, of the debtor's fraud prior to discharge. *See, e.g., In re Stein*, 102 B.R. at 366. In fact, it has been held that dismissal under 11 U.S.C. § 727(d)(1) is proper where, prior to discharge, the party requesting revocation of discharge knows of facts that indicate a possible fraud was committed by the debtor. *See, e.g., Mid–Tech Consulting, Inc. v. Swendra*, 938 F.2d 885 (8th Cir.1991).

to in Paragraph 79, must be interpreted as a reference to: (i) the Debtor/Defendant's false statements on the Statement of Financial Affairs, on Schedule B–2, at the 341 Meeting, and at the Rule 2004 Examination, and/or (ii) the Debtor's alleged misconduct concerning the production of documents in this case.[10] This conclusion is required because the only allegations in the Second Complaint that would have been grounds to object to the Debtor/Defendant's discharge are the allegations concerning the Debtor/Defendant's fraud in making false statements in this case and/or the allegations concerning the Production Fraud.

 Consequently, Paragraph 79 is an acknowledgment by Citibank that it knew of the Debtor/Defendant's false statements and/or Production Fraud prior to the Discharge Date.[11] Therefore, because the Debtor/Defendant's false statements and Production Fraud are the basis of the alleged fraud in obtaining discharge, Paragraph 79 reveals that *prior to the Discharge Date* Citibank knew that the Debtor/Defendant had committed the fraud alleged in procuring his discharge. Such knowledge renders Citibank incapable of satisfying the requirement of 11 U.S.C. § 727(d)(1).

Accordingly, the plain meaning of 11 U.S.C. § 727(d) mandates a dismissal of the Second Complaint.

The Supreme Court has made it clear that where a statute's language is plain, "the sole function of the courts is to enforce it according to its terms", *United States v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989) (*quoting, Caminetti v. United States,* 242 U.S. 470, 37 S.Ct.

192, 61 L.Ed. 442 (1917)), notwithstanding that a more equitable result could be achieved otherwise, and that an application of a statute's plain meaning may lead to harsh results. *See, e.g., Taylor v. Freeland & Kronz,* —— U.S. ——, 112 S.Ct. 1644, 118 L.Ed.2d 280 (1992). Moreover, although bankruptcy courts are courts of equity, the Supreme Court has held that "whatever equitable powers remain in the bankruptcy courts must and can only be exercised within the confines of the Bankruptcy Code." *Norwest Bank Worthington v. Ahlers,* 485 U.S. 197, 206, 108 S.Ct. 963, 969, 99 L.Ed.2d 169 (1989); *see also Official Committee of Equity Security Holders v. Mabey,* 832 F.2d 299, 302 (4th Cir.1987) ("equitable powers are not a license for a court to disregard the clear language and meaning of the bankruptcy statutes and rules").

We recognize that there may be an exception to the plain meaning rule where the literal language of a statute will lead to an absurd result or a result that could not have been intended by its drafters. *See Ron Pair Enterprises, Inc.,* 489 U.S. at 242, 109 S.Ct. at 1031 (*quoting, Griffin v. Oceanic Contractors, Inc.,* 458 U.S. 564, 571, 102 S.Ct. 3245, 3250, 73 L.Ed.2d 973 (1982)) ("the plain meaning of legislation should be conclusive, except in the 'rare cases in which the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters' "). However, this is not one of those rare cases. As set forth above, Citibank, prior to the Discharge Bar Date, began to suspect that the Debtor/Defendant may have conducted business with Vasilescu, FAV and Culinary Products. Citibank's suspicion led it to believe that it might have grounds

**10.** As set forth in footnote 3, the Debtor/Defendant allegedly also committed the Production Fraud. We will assume that the Production Fraud is an additional ground for finding that he procured his discharge through fraud. We assume, without deciding, that the Debtor/Defendant's alleged failure to provide certain documents to Citibank would have been grounds to deny discharge pursuant to 11 U.S.C. § 727(a)(3). We note, however, that this assumption is questionable considering that the Debtor/Defendant did provide the Trustee with the documents allegedly withheld from Citibank. However, as set forth in footnote 3, we need not focus on the Production Fraud because we have

already held that the Debtor/Defendant procured his discharge through fraud by making false statements throughout this case. Moreover, with respect to the dispositive issue of Citibank's knowledge of the Debtor/Defendant's fraud in procuring discharge, our analysis concerning the Debtor/Defendant's false statements is equally applicable to the Debtor/Defendant's alleged Production Fraud.

**11.** We note that at the May 12, 1993 hearing, arguments of counsel assumed that discovery of the fraud occurred between the Discharge Bar Date and the Discharge Date.

for objecting to the Debtor/Defendant's discharge or to the dischargeability of its claim, because upon suspecting that the Debtor/Defendant may have conducted business with Vasilescu, FAV and Culinary Products, Citibank inquired of the Debtor/Defendant's counsel whether the Debtor/Defendant would agree to an extension of the time within which Citibank could object to discharge. The Debtor/Defendant refused to extend such time.

Inexplicably, Citibank failed to seek such an extension from this Court.[12]

Although the Second Complaint does not address Citibank's failure to ask this Court for such an extension, the issue was discussed at the hearing held on May 12, 1993. It is apparent from that hearing that Debtor/Defendant's counsel incorrectly believed that knowledge of fraud rising to the level of that needed to frame a non-dischargeability complaint was needed to request an extension of time pursuant to Fed.R.Bankr.P. 4004(b).[13] If such a level of knowledge were required, there would never be a need to seek an extension because the party who would otherwise need such an extension would have the requisite knowledge to commence a proceeding to object to discharge. Accordingly, Fed.R.Bankr.P. 4004(b) was intended for creditors such as Citibank, who, prior to the discharge bar date, merely suspect, but are not certain, that it has grounds for objecting to discharge.

We believe that in what is essentially an equitable application by Citibank asking this Court to disregard the plain meaning of 11 U.S.C. § 727(d)(1) and deny the Debtor/Defendant's motion to dismiss, it is incumbent on Citibank to show that it did everything it could have reasonably been expected to do given the facts of this case or at the very least to provide this Court with a reasonable explanation as to why it failed to do so. Citibank has done neither. By failing to bring a Fed.R.Bankr.P. 4004(b) motion prior to the Discharge Bar Date when it suspected that the Debtor may have conducted business with Vasilescu, FAV and Culinary Products, Citibank failed to do everything it could have reasonably been expected to do under the circumstances. Moreover, the explanation for such failure given by Citibank's counsel at the May 12, 1993 hearing was insufficient.

Accordingly, the facts of this case do not support a deviation from the plain meaning of the statute and, therefore, the Second Complaint fails to state a claim upon which relief can be granted.[14]

## CONCLUSIONS OF LAW

I. Citibank's knowledge prior to the Discharge Date of the Debtor/Defendant's fraud in obtaining his discharge renders it ineligible for the relief it seeks under the plain meaning of 11 U.S.C. § 727(d)(1).

II. The facts of this case do not support a deviation from the plain meaning of 11 U.S.C. § 727(d)(1).

III. The motion of the Debtor/Defendant to dismiss the second amended complaint is granted.

---

**12.** Fed.R.Bankr.P. 4004(b) provides:

(b) Extension of Time. On motion of any party in interest, after hearing on notice, the court may extend for cause the time for filing a complaint objecting to discharge. The motion shall be made before such time has expired.

**13.** At the hearing held on May 12, 1993, the following colloquy occurred between this Court and Debtor/Defendant's counsel, Robert M. Brill, Esq.:

THE COURT: Was a motion [to extend the time to object to discharge] made?

MR. BRILL: No a motion was not made at that time, Your Honor. I think we have indicated in our complaint that we did not have the requisite knowledge or more impor-

tantly the requisite evidence to frame a non-dischargeability application.

THE COURT: I understand, if you had it you would not have had to ask for the extension.

**14.** This decision herein should not be construed as following that of *Powell v. First National Bank of Nashville, Arkansas,* 113 B.R. 512 (W.D.Ark. 1990), where the court essentially held that under no circumstances would it disregard the plain meaning of 11 U.S.C. § 727(d) in favor of a creditor who discovered a debtor's fraud after the discharge bar date but prior to the discharge date. Instead, we merely hold that given the facts of this case, Citibank has not demonstrated sufficient grounds for this court to disregard the plain meaning of 11 U.S.C. § 727(d)(1).

Settle an Order in accordance with this decision within ten (10) days.