In re Kevin K. WHITE and Elizabeth R. White, Debtors.

Bankruptcy No. IP88–4976 V.

United States Bankruptcy Court,
S.D. Indiana,
Indianapolis Division.

Feb. 22, 1990.

Guy G. Kibbe, Chilcote, Kertis & Coppes, Indianapolis, Ind., for debtors.

Stephen L. Huddleston, Clarke House, Franklin, Ind., for Bank.

James L. Tuohy, Indianapolis, Ind.

## ORDER DENYING AMERITRUST BANK'S MOTION FOR EXTENSION OF TIME AND CLARIFYING PARTIES' RIGHTS

RICHARD W. VANDIVIER,
Bankruptcy Judge.

This matter comes before the Court on the Motion for Extension of Time to Object to Discharge ("the Motion for Extension of Time") filed on June 16, 1989, by Ameritrust Bank, Johnson County, f/k/a Franklin Bank and Trust Company ("the Bank"). A hearing was held on August 30, 1989. The Court now denies the motion for the reasons below and clarifies the rights of the parties.

1. The Debtors filed for relief under Chapter 7 of the Bankruptcy Code on August 5, 1988. In their original schedules, they did not list the Bank as a creditor. A meeting of creditors was held on October 25, 1988, and was continued.

2. On November 23, 1988, the Debtors amended their schedules to list additional creditors. The Bank was listed as a creditor with a $5000.00 claim which was not disputed, contingent or unliquidated, secured by a 1987 Kubota tractor ("the tractor") and a TV satellite dish. The amended statement of intentions showed that the Debtors intended to surrender the tractor and the satellite dish to the Bank. The satellite dish has been surrendered.

3. A continued meeting of creditors was held on November 28, 1988. On that date, the trustee signed a report of abandonment and no distribution, which was filed on December 8, 1988.

4. Notice to the Bank and other added creditors, dated December 1, 1988, gave the added creditors 60 days from that date file objections to discharge and complaints to determine dischargeability of particular debts under section 523(c) ("dischargeability complaints"). The deadline date was therefore January 30, 1989. The Bank did not file an objection to discharge or a dischargeability complaint before the deadline date.

5. On February 28, 1989, the Debtors amended their schedules to add still more creditors, which creditors were given 60 days to file objections to discharge and dischargeability complaints. When this end of April deadline passed without any objection to discharge being filed, discharge should have been entered "forthwith". *See* Bankruptcy Rule 4004(c). However, apparently due to administrative oversight, discharge was not entered, and has not yet been entered.

6. On June 16, 1989, the Bank filed the Motion for Extension of Time, to which the Debtors object as being untimely filed. At the hearing, Steven L. Clarkson ("Clarkson"), a loan officer of the Bank, testified about the Bank's attempts to pick up the tractor from Mr. White. The Bank's repossession agents, on at least three occasions, went to pick up the tractor. The first time, the Debtors were not home. The second time, Mr. White told the agents that he had to talk to his attorney before turning over the tractor. On both of these occasions,

the Bank had believed that the Debtors would be at home and prepared to turn over the tractor. The last attempt was made sometime in January or February, 1989, at which time Mr. White told the Bank's agents that the tractor had been stolen. He said that the tractor had been stored at a friend's self-store place and was missing when he went to pick it up, so he believed it must have been stolen sometime in the few months before.

7. In June, 1989, Clarkson had a discussion with Mr. White about problems the Bank was having with a postpetition loan. He then asked Mr. White about the situation with the stolen tractor, because he had heard there might be insurance on it or a police report about it. At that time, Mr. White said that there would be a problem with the tractor because he had sold it. Shortly thereafter, the Bank filed its Motion for Extension of Time. There is no evidence as to when Mr. White sold the tractor.

8. In the Motion for Extension of Time, the Bank seeks an extension of time in which to object to the discharge of Mr. White (Mrs. White is not mentioned in the motion or its caption), and to filed a complaint to determine dischargeability of the debt to the Bank. Mr. White argues that the Court lacks discretion to enlarge the time for filing either once the deadline has passed.

9. On motion by a party in interest, for cause, a court may extend the time for filing a complaint objecting to discharge. Such motion shall made before such time has expired. Bankruptcy Rule 4004(b). On motion by a party in interest, for cause, a court may extend the time for filing a complaint to determine dischargeability of the types of debts listed in 11 U.S.C. section 523(c), which includes debts for fraud and willful and malicious conversion. Such motion also shall be made before such time has expired. Bankruptcy Rule 4007(c). A court may enlarge the time for such motions only to the extent and under the conditions stated in those rules. Bankruptcy Rule 9006(b)(3).

■ 10. Case law strongly supports Mr. White's position that once the deadline has passed without the creditor filing a dischargeability complaint or a motion for enlargement of time to file such a complaint, a court has no discretion to enlarge the time, even for excusable neglect, and such a complaint is forever barred. *See e.g. In re Hill*, 811 F.2d 484 (9th Cir.1987); *In re Kirsch*, 65 B.R. 297, 299–300 (Bankr. N.D.Ill.1986). Although this may seem inequitable in some cases, creditors have some escape from the harshness by the ability to move for an enlargement of time while they investigate whether there may be grounds for filing a dischargeability complaint. The Court concludes that it has no discretion to enlarge the time set by Rule 4007 for filing a dischargeability complaint and that the Bank is now barred from filing such a complaint.

11. Case law also strongly supports Mr. White's position that once the deadline has passed for filing a complaint objecting to discharge or a motion for enlargement of time to file such a complaint, a court has no discretion to enlarge the time, even for excusable neglect. *See In re Ensminger*, 42 B.R. 548, 551 (Bankr.W.D.Okla.1984); *In re Lane*, 37 B.R. 410, 414 (Bankr. E.D.Va.1984). Thus, the Court now has no discretion to enlarge the time set by Rule 4004 for filing a complaint objecting to discharge.

12. However, while dischargeability complaints, once barred, may never be resurrected, the Bankruptcy Code makes provision for revoking a discharge once granted. On request of the trustee, a creditor or the U.S. Trustee, a court shall revoke a Chapter 7 discharge if the discharge was obtained through the fraud of the debtor, and the requesting party did not know of such fraud until after the granting of such discharge. 11 U.S.C. section 727(d)(1). A request to revoke a fraudulently procured discharge may be made up to one year after discharge is granted. 11 U.S.C. section 727(e)(1). Clearly Congress intended that a fraudulently procured discharge would not be protected by the running of the short time limit for filing complaints objecting to discharge set by Rule 4004, if

the fraud was not apparent until after the deadline had passed.

13. The problem in this case is that the Bank claims it discovered what may be evidence of fraud after the 60 day deadline had run, but before discharge is granted. Surely the drafters of the Bankruptcy Code and Rules did not mean to create a gap period in cases in which entry of discharge is for some reason delayed (which could be at the *debtor's* request, to allow completion of reaffirmation agreements), so that discharges procured by fraud discovered during this period enjoy special protection. An overly literally interpretation would mean that a debtor could obtain a discharge by fraud that would be insulated from attack under section 727(d) as long as the fraud came to light after the deadline for filing complaints objecting to discharge but before the discharge is granted. At least one other court has confronted this gap problem and concluded that the interests of justice would best be served in such cases if appropriate parties were allowed to challenge a debtor's right to discharge if they did not learn of the debtor's misconduct until after the Rule 4004 period had expired. *See In re Meo*, 84 B.R. 24, 27–28 (Bankr.M.D.Pa.1988). This Court concludes that this is the only reasonable and equitable interpretation of section 727(d).

14. The running of the Rule 4004 deadline, therefore, does not bar the Bank from challenging Mr. White's right to a discharge if the conditions of sections 727(d) and (e) are met. Such an action could not be styled a "Complaint to Revoke Discharge", since discharge has not yet been entered, but could properly be styled a "Complaint Challenging Discharge under Section 727(d)". (Discharge cannot yet be entered because the Debtors amended their schedules to add still more creditors on June 16, 1989, and due to their attempt to include post-petition debts, notice to these creditors has been delayed.) The fraud to support such a challenge under section 727(d) must relate to a debtor's procurement (or attempted procurement) of a discharge, not just fraud vis-a-vis a creditor that might have have rendered a particular debt nondischargeable. *See In re Jones,*

71 B.R. 682, 685 (S.D.Ill.1987). Thus, if the Bank were to challenge Mr. White's right to discharge under section 727(d), it would have to show that he is attempting to procure a discharge through fraud, not simply that the alleged fraud or other misconduct would have supported a determination that the debt to the Bank would have been nondischargeable if a dischargeability complaint had been timely brought. Moreover, the Bank must prove that such misconduct could not have been discovered with reasonable diligence in time for it to take action within the Rule 4004 time limit. *See In re McElmurry*, 23 B.R. 533, 536 (W.D.Mo.1982).

15. As further clarification of the parties' rights, the Court notes that a discharge under Chapter 7 discharges a debtor only from debts that arose prepetition or that are deemed to have arisen prepetition. *See* 11 U.S.C. section 727(b). Thus, most claims arising postpetition are not discharged in Chapter 7, even if they arose during the pendency of the bankruptcy proceeding. Moreover, creditor action against a debtor on claims arising postpetition is generally not prevented by the automatic stay before discharge or the permanent injunction after discharge. *See* 11 U.S.C. sections 362(a) and 524(a). Thus, if any of Mr. White's postpetition actions give rise to a claim that is distinct from the Bank's prepetition claim against the Debtors, as postpetition conversion or fraud could, that new postpetition claim is not subject to discharge in this case and may be pursued in an appropriate forum.

16. The Court expresses no opinion on the merits of any action the Bank might attempt to bring against the Debtors.

With the above clarification of the parties' rights, the Court DENIES the Bank's Motion for Extension of Time.

SO ORDERED.