In re Joseph GEORGE, Debtor.

ELMIRA SAVINGS BANK, Plaintiff,

v.

Joseph GEORGE, Defendant.

Bankruptcy No. 93–21658.
Adv. No. 94–2030.

United States Bankruptcy Court,
W.D. New York.

March 10, 1995.

Terrance W. Emmens, Lacy, Katzen, Ryen & Mittleman, Rochester, NY, for debtor/defendant.

J. William O'Brien, II, Elmira, NY, for plaintiff.

## BACKGROUND

JOHN C. NINFO, II, Bankruptcy Judge.

On July 20, 1993, the Debtor, Joseph C. George, (the "Debtor") filed a petition initiating a Chapter 7 case. On his schedules, he listed Elmira Savings Bank, FSB ("Elmira Savings") as an unsecured creditor with a fixed and liquidated claim of $25,000.00. On August 6, 1993, a Notice was prepared and forwarded by the Court to all of the Debtor's creditors and parties in interest which notified them that: (1) an interim trustee had been appointed (the "Trustee"); (2) a Section 341 meeting of creditors would be conducted on August 27, 1993 (the "341 Meeting"); and (3) October 26, 1993 had been set as the last date for creditors to file complaints objecting either to the Debtor's discharge under Section 727 or to the dischargeability of any debt under Section 523(a)(2), (4) or (6).

After he conducted the 341 Meeting on August 27, 1993, the Trustee filed a Minute Report which indicated that: (1) no representative of Elmira Savings had attended the Meeting; (2) there were possible assets available in the case, including a preferential mortgage and preferential payments to an insider; and (3) the 341 Meeting had been closed.

## I. *The Dischargeability Proceeding*

On October 19, 1993, Elmira Savings commenced an Adversary Proceeding (the "Dischargeability Proceeding") to have its debt determined to be nondischargeable under Section 523(a)(2)(B). In its Complaint, Elmira Savings alleged that the Debtor had made materially false statements regarding his financial condition on an August 22, 1989 Financial Statement (the "Financial Statement"). Specifically, the alleged false statements were that the value of his assets exceeded $725,000.00 and his net worth exceeded $480,000.00.

On December 17, 1993, the Court conducted a pretrial conference which was adjourned to February 24, 1994 so that: (1) the parties could conduct initial discovery; (2) Elmira Savings could file a copy of the Financial Statement for the Court's review prior to the adjourned pretrial conference; and (3) Elmira Savings would have the opportunity to indicate with additional specificity those items on the Financial Statement which it alleged were materially false.

On October 27, 1993, the Court entered an order discharging the Debtor from all of his

otherwise dischargeable debts (the "Discharge Order").[1]

At the adjourned pretrial conference, counsel for Elmira Savings indicated that: (1) the Debtor had been deposed on February 11, 1994; (2) as a result of the Debtor's testimony at the deposition, Elmira Savings was reevaluating its position in the Dischargeability Proceeding; (3) the Debtor's testimony at the deposition indicated that he had failed to disclose material information on his bankruptcy schedules, including his ownership of various assets; and (4) as a result of the Debtor's testimony at the deposition, the necessary papers had been prepared and forwarded to the Court to commence an adversary proceeding requesting that the Debtor's discharge be revoked under Section 727(d) [2]. Counsel for the Debtor at the conference: (a) continued to assert that it was clear from the Debtor's testimony at the deposition that he had not made any materially false statements on the Financial Statement; and (b) insisted that Elmira Savings allege with specificity, as required by Rule 9(b) of the Federal Rules of Civil Procedure, made applicable by Rule 7009 of the Rules of Bankruptcy Procedure, what, if any, materially false written statements the Debtor had made. The Dischargeability Proceeding was placed on the Court's Trial Calendar for March 16, 1994 at which time a trial was scheduled for April 22, 1994 and an Order entered requiring that by March 25, 1994 Elmira Savings file an amended complaint which would comply with the requirements of Rule 7009.

On March 22, 1994, Elmira Savings filed and served its amended complaint (the "Amended Complaint"). The only materially false statements alleged by Elmira Savings were that: (1) the Debtor had overstated his annual income at $211,000; (2) the Debtor had overstated the value of his assets; and (3) the Debtor had understated the amount of his liabilities. The Amended Complaint also included a second cause of action which

alleged that a portion of the Elmira Savings indebtedness was for a $1,200.00 advance obtained by the Debtor within thirty-five days of the filing of his bankruptcy petition and in contemplation of bankruptcy.

On the April 22, 1994 trial date, the parties advised the Court that the Dischargeability Proceeding had been settled, and on May 6, 1994 a Stipulated Order of Settlement was entered which required the Debtor to pay Elmira Savings $900.00 in three monthly installments.

## II. *The Discharge Proceeding*

On February 24, 1994 Elmira Savings commenced its adversary proceeding to have the Debtor's discharge revoked under Section 727(d)(1) (the "Discharge Proceeding"). In its Complaint, Elmira Savings alleged that the Debtor had filed false and misleading schedules and statements with the Bankruptcy Court in an attempt to defraud the Court and obtain a discharge. The Complaint alleged that the Debtor's schedules and statements were false and misleading in that in his schedules and statements the Debtor had: (1) understated his monthly income and overstated his monthly expenses; (2) overstated the amount of his liabilities; and (3) failed to list a number of assets, including promissory notes due from his son in the amount of $23,738, promissory notes due from his daughter in the amount of $15,631 and a second mortgage covering property in Corning, New York.

On March 2, 1994, the Court received a letter from the Trustee in which he indicated that he had reviewed the Complaint in the Discharge Proceeding and, as a result, he was formally requesting copies of all future pleadings, notices and correspondence.

On March 3, 1994, the Debtor filed an Amended Schedule B of Personal Property which added to item 17, Other Liquidated Debts Owing to the Debtor, a loan to his son

---

1. The dischargeability of the indebtedness to Elmira Savings was still to be determined in the pending Dischargeability Proceeding.

2. Section 727(d)(1) provides:
   On request of the trustee, a creditor, or the United States trustee, and after notice and a hearing, the court shall revoke a discharge granted under subsection (a) of this section if—
   (1) such discharge was obtained through the fraud of the debtor, and the requesting party did not know of such fraud until after the granting of such discharge;

in the amount of $23,000 and a loan to his daughter in the amount of $15,000.

On March 23, 1994, the Debtor filed an Answer and a Motion for Summary Judgment (the "Motion for Summary Judgment").

The Motion for Summary Judgment asserted that: (1) no grounds existed which would have prevented the Debtor from receiving his discharge under Section 727 had they been known and presented to the Court prior to the entry of the Discharge Order; and (2) Elmira Savings had actual knowledge of the alleged fraudulent information prior to the entry of the Discharge Order.

The Motion for Summary Judgment in addressing a number of the allegations contained in the Complaint alleged that: (1) the Corning mortgage was not listed in the Debtor's schedules because at the time of the filing of the schedules the first mortgage holder on the property had completed a foreclosure proceeding, which cut off the Debtor's second mortgage lien, and the individual Debtor had filed a Chapter 7 case, listed the mortgage debt due to the Debtor and received a discharge; and (2) the unsecured liabilities to various creditors listed by the Debtor, which Elmira Savings had alleged substantially overstated his liabilities because of duplication, had been scheduled based on the entries set forth on a May, 1993 TRW Consumer Credit Report ordered by Debtor's counsel and a May, 1993 GMAC demand letter without either the Debtor or his counsel focusing on the fact that the debt had been assigned and, therefore, there was in fact a duplication.

In support of the Motion for Summary Judgment, the Debtor also submitted an Affidavit in which he admitted that he failed to list the loans made to his children. By way of explanation, however, the Affidavit indicated that it was not the Debtor's intention to require that his children repay the loans if they completed college, and each of his children had completed college at the time of the filing of his petition.

The Motion for Summary Judgment further asserted that to the extent that: (1) it was alleged that the Debtor's failure to list certain assets, including the promissory notes due from his children, was part of a fraud by the Debtor to obtain a discharge; and (2) such a fraudulent failure would have resulted in the Debtor not receiving a discharge, Elmira Savings was aware of the fraud prior to and at the time of the entry of the Discharge Order because all or a portion of the promissory notes were listed on the Financial Statement. The Motion for Summary Judgment also contended that Elmira Savings had failed to plead with specificity the various elements of the Debtor's fraud, including that the Debtor had made material misrepresentations with intent to deceive. The Motion also requested sanctions against Elmira Savings for commencing a frivolous proceeding.[3]

At an April 29, 1994 hearing, at which the Trustee appeared, the Court denied the Motion for Summary Judgment. The Court indicated that: (1) it believed there were material issues of fact to be determined regarding the Debtor's knowledge and intent in completing his schedules; (2) the Debtor's explanation in his Affidavit of never having had an intention to collect the promissory notes due from his children in the event that they graduated from college was inconsistent with listing them without explanation on his Financial Statement and in a Stipulation of Settlement with his former spouse, which raised a serious issue as to the Debtor's credibility which could not be determined from the pleadings before the Court; (3) the intentional failure by a debtor to list promissory notes due from an insider in an amount in excess of $39,000 could clearly be grounds for the denial of discharge under Section 727(a); (4) it appeared from the pleadings and proceedings in the Dischargeability Proceeding that, prior to the entry of the Discharge Order and its deposition of the Debtor, the focus of Elmira Savings had been on the Debtor's 1989 Financial Statement and the possibility that he had overstated his income and the value of his assets and had

3. The contention of Elmira Savings in focusing on the Debtor's alleged understatement of income and overstatement of liabilities was that the Debtor was attempting to avoid a Section 707(b) dismissal for substantial abuse.

understated his liabilities, not at all on whether the Debtor had failed to account for or list any of the assets shown on the Financial Statement on his bankruptcy schedules; and (5) the Trustee had not advised the Court at the return date of the Motion for Summary Judgment that he would not himself request to join in the Discharge Proceeding or commence his own adversary proceeding to have the Debtor's Discharge revoked on the same grounds alleged by Elmira Savings. After denying the Motion for Summary Judgment, the Court placed the Discharge Proceeding on the Court's Trial Calendar for June 15, 1994.

At the request of the parties, to allow them time to conduct additional discovery, the Discharge Proceeding was adjourned on June 15, July 20 and August 17, 1994. After an additional telephonic pretrial conference on September 21, 1994, the matter was again scheduled for the Trial Calendar on November 8, 1994. However, the Debtor interposed an Answer to an Amended Complaint filed by Elmira Savings on September 20, 1994 and made a renewed Motion for Partial Summary Judgment returnable on November 8, 1994 (the "Motion for Partial Summary Judgment").

The Amended Complaint set forth specific allegations regarding the Debtor's alleged fraudulent conduct, including, but not limited to: (1) on his schedules the Debtor had submitted false and fraudulent information regarding his income; (2) on his schedules the Debtor had submitted false and fraudulent information as to the value of nine building lots owned by him and his former spouse in North Java, New York; (3) the Debtor had falsely testified as to an unrecorded mortgage in favor of his mother; (4) on his schedules the Debtor had fraudulently failed to list a number of assets including over $39,000 due on promissory notes from his children; (5) on his schedules the Debtor failed to disclose various prepetition preferential payments and fraudulent payments to relatives, including a $2,000 transfer to his son; and (6) on his schedules the Debtor had fraudulently overstated his monthly expenses.

In the Motion for Partial Summary Judgment and an accompanying Memorandum of Law, the Debtor argued that the Court should enter judgment against Elmira Savings and dismiss the Discharge Proceeding because Elmira Savings had not met its burden under Section 727(d)(1) to show that, even assuming the misinformation on the Debtor's schedules was both intentional and fraudulent, it did not have knowledge of the fraud prior to the entry of the Discharge Order. The Debtor contended that prior to the entry of the Discharge Order, Elmira Savings had failed to make a full and complete investigation into all of the Debtor's financial affairs and the accuracy of his schedules which it should have made because it believed the Financial Statement the Debtor had given to it in 1989 was false. The Debtor argued that Elmira Savings should have made a complete and thorough investigation into the Debtor's financial affairs at the 341 Meeting or at a Rule 2004 examination, where it could have compared the Financial Statement and the Debtor's schedules and discovered much, if not all, of the alleged misinformation on the schedules. The Debtor further asserted that Elmira Savings could have reviewed his checking account history, since his account was maintained with Elmira Savings, to determine whether there had been any undisclosed, material prepetition transfers, payments or other incorrect information listed in the schedules and statements. (The Debtor noted that Elmira Savings had by now obtained and produced copies of these checking account statements to verify some of the alleged fraudulent conduct.)

On October 26, 1994, the Trustee commenced an adversary proceeding under Section 727(d) to have the Debtor's discharge revoked because it had been obtained through fraud (the "Trustee Adversary Proceeding"). The Complaint in the Trustee Adversary Proceeding incorporated by reference the Amended Complaint of Elmira Savings. A November 22, 1994 Answer interposed by the Debtor set forth affirmative defenses of laches and the Trustee's predischarge knowledge of the fraud. In January, 1995, the Trustee advised the Court and the Debtor's counsel that he had requested the appointment of a successor trustee since

he frequently represented a credit card company which Elmira Savings in the Amended Complaint had alleged received a non-disclosed preferential payment from the Debtor. Thereafter, the Court rescheduled a pretrial conference in the Trustee Adversary Proceeding to March 21, 1995 to allow the Office of the U.S. Trustee to appoint a successor trustee and to afford that trustee an opportunity to become fully familiar with the Debtor's case and the pending adversary proceedings.

## DISCUSSION

■ Section 727(d)(1) which provides for the revocation of a debtor's discharge, is derived from Section 15 of the Bankruptcy Act.[4] For a debtor's discharge to be revoked under Section 727(d)(1), it must be shown that: (1) the discharge was obtained by fraud in fact; (2) the party seeking revocation did not know of the fraud before the granting of the discharge; and (3) the fraud, if known, would have resulted in the denial of a discharge under Section 727(a). *See In re Emery*, 170 B.R. 777, 782–83 (Bankr.E.D.N.Y. 1994).

**4.** Section 15 of the Bankruptcy Act provides:

The court may revoke a discharge upon the application of a creditor, the trustee, the United States attorney, or any other party in interest, who has not been guilty of laches, filed at any time within one year after a discharge has been granted, if it shall appear (1) that the discharge was obtained through the fraud of the bankrupt, that the knowledge of the fraud has come to the applicant since the discharge was granted, and that the facts did not warrant the discharge; or (2) that the bankrupt, before or after discharge, received or became entitled to receive property of any kind which is or which became a part of the bankrupt estate and that he knowingly and fraudulently failed to report or to deliver such property to the trustee; or (3) that the bankrupt during the pendency of the proceeding refused to obey any lawful order of, or to answer any material question approved by, the court. The application to revoke for such refusal may be filed at any time during the pendency of the proceeding or within one year after the discharge was granted, whichever period is longer.

**5.** Section 521(1) provides:

The debtor shall—
(1) file a list of creditors, and unless the court orders otherwise, a schedule of assets and

The principal allegations of fraudulent conduct made by Elmira Savings were that the Debtor's schedules and statements, filed pursuant to Section 521(1)[5], were intentionally inaccurate, incomplete and false in a number of respects.[6]

### I. *Knowledge of Fraud*

■ The Court believes that Elmira Savings has met its burden to show by a preponderance of the evidence[7] that prior to the entry of the Discharge Order it did not have knowledge that the schedules and statements filed by the Debtor with the Bankruptcy Court may have been inaccurate, incomplete or false.

Based upon the pleadings and proceedings in the Dischargeability Proceeding, including an initial December 17, 1993 pretrial conference, the Court finds, as it did in deciding the prior Motion for Summary Judgment, that Elmira Savings, prior to the entry of the Discharge Order, was focused on the Financial Statement, which after comparing it to the Debtor's bankruptcy schedules and statements, it believed may have been materially false when presented to it in 1989. Elmira Savings believed that the Financial State-

liabilities, a schedule of current income and current expenditures, and a statement of the debtor's financial affairs.

**6.** The Court on numerous occasions has expressed its belief that debtors are afforded extraordinary rights and remedies by the Bankruptcy Code and the Bankruptcy System with very little asked of them in return. What is asked of debtors, however, is that they fulfill their duties under Section 521. In the case of a high income debtor who was engaged in a business and who is represented by knowledgeable and experienced counsel, like this Debtor, there is a heightened expectation that in the fulfillment of his duties under Section 521(1) the required schedules and statements will be detailed, complete and accurate.

**7.** In 1991, the Supreme Court settled a conflict among the Circuit Courts regarding the appropriate standard of proof in discharge matters. Citing the legislative history of § 727, the Court determined the applicable standard to be ordinary preponderance of the evidence. *See Grogan v. Garner*, 498 U.S. 279, 289, 111 S.Ct. 654, 660, 112 L.Ed.2d 755 (1991); *In re Wolfson*, 139 B.R. 279, 283–85 (Bankr.S.D.N.Y.1992), *aff'd*, 152 B.R. 830 (S.D.N.Y.1993), *reh'g denied*, 1994 WL 191967 (S.D.N.Y. May 12, 1994).

ment was false because it overstated the Debtor's income, overstated the value of his assets and understated the amount of his liabilities, not because there were assets which the Debtor failed to list.

There was no direct evidence presented by the Debtor in this case that indicated that prior to the Discharge Order Elmira Savings or its attorneys, who did not attend the Section 341 meeting: (1) had any actual knowledge or even a suspicion that the Debtor's schedules and statements may have been false until the February 11, 1994 deposition of the Debtor in the Dischargeability Proceeding, a time well after the entry of the Discharge Order; or (2) were conducting any investigation into whether there were grounds under Section 727 to object to the Debtor's discharge.

■ Furthermore, the Court believes that Elmira Savings acted diligently in commencing and prosecuting both the Dischargeability Proceeding and the Discharge Proceeding which it commenced immediately after the February 11, 1994 deposition of the Debtor when the accuracy of his schedules and statements first came into serious question. Therefore, to the extent that Section 727(d)(1) requires more than actual knowledge and requires the exercise of diligence in discovering facts which could result in the denial of a debtor's discharge,[8] Elmira Savings acted diligently.

■ The Debtor's suggestion that creditors must always assume that a debtor has not fulfilled his or her duties under Section 521(1) to file complete, detailed and accurate schedules and statements, and, therefore, must always fully scrutinize the schedules within the time set to file a complaint to object to discharge under Section 727, is not consistent with the clear requirements or the policy of Section 521(1), and would not be in the best interests of debtors generally or of the Bankruptcy System.[9] It could not have been intended that every creditor should assume that all debtors are "guilty until proven innocent" in fulfilling their duties under Section 521. Honesty, candor and accuracy are necessarily required of a debtor in bankruptcy. To require or expect any less would be inconsistent with the provisions and the spirit of the Bankruptcy Code. Furthermore, the suggestion that a creditor could be deemed to have knowledge under Section 727(d)(1) if it generally fails to take the initiative to review a debtor's checking account history prior to discharge in order to verify the accuracy of the debtor's schedules, could not be what Congress intended.

## II. *Denial of Discharge*

■ Although each and every one of the inaccuracies in the Debtor's schedules alleged by Elmira Savings in its Amended Complaint may not, standing alone, have resulted in the Court denying the Debtor's discharge under Section 727, clearly one or more of the inaccuracies, if fraudulently or intentionally committed, may have resulted in such a denial. For example, if it were established by a preponderance of the evidence that the Debtor intentionally failed to schedule promissory notes due from his children in an amount in excess of $39,000, that in itself would be sufficient to have denied the Debtor a discharge under Section 727. *See In re Topper,* 85 B.R. 167, 170 (Bankr. S.D.Fla.1988). Although the Debtor has indicated in his previously filed Affidavit that he never intended to collect the notes should his children graduate from college, or that there may never even have been any notes, as the Court has previously indicated, that appears to be inconsistent with his listing the notes without explanation on the Financial Statement and otherwise. This continues to raise a serious question of credibility which can only be determined at trial after the Court has the opportunity to observe the Debtor while hearing his testimony.

Furthermore, the allegations in the Amended Complaint raise a serious question

---

8. *See In re Arianoutsos,* 116 B.R. 116 (Bankr. N.D.Ill.1990) and *In re Stein,* 102 B.R. 363 (Bankr.S.D.N.Y.1989).

9. This would be true even if the Debtor's suggestion is that this is the case only if a creditor believes that its own debt is nondischargeable under Section 523, or if a creditor has a financial statement which it believes may have been in any way false when presented.

as to whether the Debtor's schedules may have been intentionally and fraudulently inaccurate, incomplete and false. Although the Debtor asserts that the deficiencies in the Debtor's schedules may have been a combination of inadvertence, oversight, miscommunications with counsel, misunderstandings, unintentional omissions or lack of attention to detail, there is a bothersome pattern in the number and combination of these explanations. This bothersome pattern prevents the Court at this time from, as the Debtor would have it do, analyzing each allegation by Elmira Savings on a stand-alone basis to determine: (1) if it was intentional or otherwise fraudulent; or (2) whether it would have been sufficiently material to have resulted in the denial of discharge even if it were intentional or fraudulent and, if not, granting partial summary judgment dismissing the Complaint as to that allegation. Again, Elmira Savings in its Amended Complaint has set forth a sufficient number of deficiencies in the schedules and statements to raise a serious question as to the Debtor's intentions in the preparation and filing of his schedules.

On the facts and circumstances of this case, an evidentiary hearing with testimony by the Debtor is essential to the Court so that it can determine the Debtor's credibility and whether there has been any intentional fraud committed by the Debtor which would warrant his discharge being revoked.

## CONCLUSION

The Motion for Partial Summary Judgment is in all respects denied.

**IT IS SO ORDERED.**