**In re Claude EMERY, Debtor.**

**CITIBANK, N.A., Plaintiff/Appellant,**

**v.**

**Claude EMERY, Defendant/Appellee.**

No. 94–CV–5915 (JS).

United States District Court,
E.D. New York.

Sept. 26, 1996.

Robert M. Brill, Marc A. Lebowitz, Zeich-ner Ellman & Krause, New York City, for Plaintiff/Appellant.

Richard K. Bernstein, Richard K. Bern-stein Associates, P.C., New York City, for Defendant/Appellee.

## OPINION AND ORDER

SEYBERT, District Judge:

This is an appeal of a final order of the United States Bankruptcy Court for the Eastern District of New York (Holland, B.J.) which dismissed plaintiff/appellant Citibank N.A.'s ["Citibank's"] second amended com-plaint for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6). In its second amend-ed complaint, Citibank alleged that defen-dant/appellee Claude Emery ["Emery"] com-mitted fraud in procuring his discharge in bankruptcy, and that therefore the revoca-tion of his discharge is warranted under 11 U.S.C. § 727(d)(1). For the reasons that follow, the order of the Bankruptcy Court is reversed.

## FACTUAL BACKGROUND

On May 8, 1991, appellee Emery filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code, 11 U.S.C. § 701 et seq., in the United States Bankruptcy Court for the Eastern District of New York. On August 8, 1991, Emery filed an amended petition. R. 1–36. Appellant Citibank was listed as an unsecured creditor with a sched-uled claim for $8,854.24. R. 11, 20, 29.

Pursuant to 11 U.S.C. § 341(a), Emery met with his creditors [the "341 meeting"]. The 341 meeting took place on July 12, 1991 and was continued on August 8, 1991. Ap-pellant's Br. at 5; R. 37–146. Citibank was present at both meetings. During the 341 meetings, Emery's assets, liabilities, income, and financial condition were discussed. R. 37–146.

Pursuant to Fed.R.Bankr.P. 4004, Citibank had 60 days from the date of the initial 341 meeting, that is, until September 10, 1991 [the "Discharge Bar Date"], to file a com-plaint objecting to the debtor's discharge pursuant to 11 U.S.C. § 727(a). According to Citibank, as of September 10, 1991, it did not have a sufficient basis to object to the discharge or to file a dischargeability com-plaint.[1] R. 921–22.

---

1. Citibank claimed that, in early September 1991, subsequent to the 341 meetings, it inquired

Citibank alleges that, sometime after August 8, 1991, it discovered "apparent inconsistencies and possible misstatements" in Emery's sworn statements. R. 149–50. Aware that Emery was under investigation by the New York State Attorney General, Citibank began to suspect that Emery had committed fraud in the bankruptcy proceeding. R. 922–23.

On October 9, 1991, Citibank filed a proof of claim for $16,258,354.24. R. 550–53. Shortly thereafter, Citibank requested the Bankruptcy Court to allow an examination of Emery pursuant to Fed.R.Bankr.P. 2004 [the "2004 Examination"]. R. 149–50. On October 23, 1991, Bankruptcy Judge Holland granted Citibank's application. R. 147–48.

The 2004 examination took place on November 18, 1991. R. 171–505. At the 2004 examination, Emery produced additional documents and acknowledged that even more documents that were requested by Citibank, but that he had not produced, may exist. R. 528. Further, Citibank alleges that the 2004 examination revealed "additional misrepresentations, distortions, and possibly perjurious statements in Debtor's petition, amended petition, and 'Statement of Business Affairs.' " R. 528. Citibank suspected that Emery intentionally concealed his participation and interest in certain ventures and enterprises. However, Citibank did not object or make any other motions with the Bankruptcy Court at that time.

The Bankruptcy Court clerk's office certified Emery's discharge on November 29, 1991 [the "Discharge Date"]. On February 10, 1992, Emery's counsel made a motion for a protective order to prevent Citibank from conducting any further examinations. R. 506–12. Citibank objected to this motion, claiming that further investigation was necessary to determine whether a post-petition fraud may have been committed by Emery. R. 513–40. On March 25, 1992, a hearing was held on Emery's motion for a protective order before Judge Holland. At the hearing, Citibank and Emery agreed to a stipulation whereby, with some restrictions, Citibank

was able to proceed with its examinations. R. 646–57.

On November 25, 1992, Citibank filed a complaint, pursuant to 11 U.S.C. § 727(d)(1), to revoke Emery's discharge. R. 658–76. Subsequently, Citibank twice amended its complaint. R. 678–700, 906–43. Emery thereafter moved to dismiss the second amended complaint, pursuant to Fed.R.Civ.P. 12(b)(6), contending that Citibank failed to state a cause of action. R. 944–52, 987–92.

On August 19, 1994, Judge Holland issued his decision. *In re Emery,* 170 B.R. 777 (Bankr.E.D.N.Y.1994); R. 1293–1303. In his decision, Judge Holland framed the issues presented as whether the second amended complaint alleged, pursuant to 11 U.S.C. § 727(d)(1), that Emery obtained his discharge through fraud, and whether Citibank had knowledge of such fraud prior to the granting of Emery's discharge. Upon concluding that Citibank satisfied the first requirement of the statute, *see id.* at 783–84, Judge Holland found that Citibank failed to establish that its knowledge of Emery's alleged fraud in obtaining his discharge arose after November 29, 1991, the day that Emery's discharge was certified by the Bankruptcy Court. In reaching this conclusion, Judge Holland found that Citibank "had grounds for objecting to Discharge as of November 18, 1991, or eleven (11) days prior to the Discharge Date of November 29, 1991." *Id.* at 784 (internal quotations omitted). In construing § 727(d)(1), Judge Holland relied on the plain meaning rule, which provides that "where a statute's language is plain, 'the sole function of the courts is to enforce it according to its terms.' " *Id.* at 785 (quoting *United States v. Ron Pair Enters.,* 489 U.S. 235, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989)).

The Bankruptcy Court also acknowledged the existence of an exception to the plain meaning rule in cases "where the literal language of a statute will lead to an absurd result or a result that could not have been intended by its drafters." *Id.* at 785. Judge Holland found this exception to the plain

---

of Emery to determine if he would consent to an extension of the Discharge Bar Date. R. 521. Emery refused to give such consent. Citibank

did not apply to the Bankruptcy Court for an extension to the Discharge Bar Date.

meaning rule to be unavailable under the circumstances presented, as a matter of equity, because Citibank, by not requesting an extension of time to the Discharge Bar Date from the court, failed "to show that it did everything it could have reasonably been expected to do given the facts of this case or at the very least to provide this Court with a reasonable explanation as to why it failed to do so." *Id.* at 786. Therefore, applying the literal language of 11 U.S.C. § 727(d)(1), Judge Holland dismissed Citibank's second amended complaint. This appeal followed.

## DISCUSSION

### A. *Standard of Review*

■ Under 28 U.S.C. § 158(a)(1), a district court has jurisdiction to hear appeals "from final judgments, orders, and decrees" of a bankruptcy court. *Id.* A district court reviews the bankruptcy court's "conclusions of law *de novo*, and findings of fact under a clearly erroneous standard." *In re Ionosphere Clubs, Inc.*, 922 F.2d 984, 988 (2d Cir.1990), *cert. denied*, 502 U.S. 808, 112 S.Ct. 50, 116 L.Ed.2d 28 (1991). Thus, in the present appeal, the Bankruptcy Court's order granting Emery's motion to dismiss Citibank's second amended complaint pursuant to Fed.R.Bankr.P. 7012(b)—which incorporates by reference Rule 12(b)(6) of the Federal Rules of Civil Procedure and its standards for evaluating the legal sufficiency of a complaint—is subject to *de novo* review.

A court should grant a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure only if " 'it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.' " *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 249–50, 109 S.Ct. 2893, 2906, 106 L.Ed.2d 195 (1989) (quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984)). In applying this standard, a district court must "read the facts alleged in the complaint in the light most favorable" to the plaintiff, and accept these allegations as true. *Id.* at 249, 109 S.Ct. at 2906; *see Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *see also Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 168, 113 S.Ct. 1160, 1163, 122 L.Ed.2d 517 (1993) (citing Fed. R.Civ.P. 8(a)(2) to demonstrate liberal system of 'notice pleading' employed by the Federal Rules of Civil Procedure).

### B. *The Problem of the Gap Period*

■ The inquiry presented here arises from the interaction of two provisions: 11 U.S.C. § 727[2] and Fed.R.Bankr.P. 4004.[3] 11 U.S.C. § 727(d)(1) allows a court to revoke a debtor's discharge if the following criteria have been satisfied: (1) the debtor obtained the discharge through fraud; (2) the creditor possessed no knowledge of the debtor's fraud prior to the granting of the discharge; and (3) the fraud, if known, would have resulted in the denial of the discharge under 11 U.S.C. § 727(a). *See In re Scarpinito*, 196 B.R. 257, 267 (Bankr.E.D.N.Y.1996); *In re George*, 179 B.R. 17, 22 (Bankr.W.D.N.Y. 1995). The creditor bears the burden of proving each of these conditions by the pre-

---

**2.** Section 727 of the Bankruptcy Code provides in relevant part:

(d) On request of the trustee, a creditor, or the United States trustee, and after notice and a hearing, the court shall revoke a discharge granted under subsection (a) of this section if—
(1) such discharge was obtained through the fraud of the debtor, and the requesting party did not know of such fraud until after the granting of such discharge[.]
(e) The trustee, a creditor, or the United States trustee may request a revocation of a discharge—
(1) under subsection (d)(1) of this section within one year after such discharge is granted[.]
11 U.S.C. § 727(d)(1), (e).

**3.** Federal Rule of Bankruptcy Procedure 4004 provides in relevant part:

(a) **Time for Filing Complaint Objecting to Discharge; Notice of Time Fixed.** In a chapter 7 liquidation case a complaint objecting to the debtor's discharge under § 727(a) of the Code shall be filed not later than 60 days following the first date set for the meeting of creditors held pursuant to § 341(a)....
(c) **Grant of Discharge.** In a chapter 7 case, on expiration of the time fixed for filing a complaint objecting to discharge and the time fixed for filing a motion to dismiss the case pursuant to Rule 1017(e), the court shall forthwith grant the discharge....
Fed.R.Bankr.P. 4004(a), (c).

ponderance of the evidence. *See Grogan v. Garner,* 498 U.S. 279, 289, 111 S.Ct. 654, 660, 112 L.Ed.2d 755 (1991); *In re George,* 179 B.R. at 22 & n. 7.

Rule 4004, in turn, allows a creditor to object to a debtor's request for discharge "not later than 60 days following the first date set for the meeting of creditors held pursuant to § 341(a)." Fed.R.Bankr.P. 4004(a). If no complaint objecting to the discharge has been filed by the creditors by the expiration of the 60–day period (i.e., the Discharge Bar Date), "the court *shall forthwith* grant the discharge...." Fed. R.Bankr.P. 4004(c) (emphasis added).

■ The statutory scheme[4] established by 11 U.S.C. § 727(d)(1), viewed against the backdrop of Fed.R.Bankr.P. 4004, presupposes that a certificate of discharge will be immediately issued after the expiration of the Discharge Bar Date. In the present case, however, as a result of administrative delays in the clerk's office of the Bankruptcy Court for the Eastern District of New York, 80 days elapsed until the certification of discharge was entered. This 80–day period represents a "Gap Period." This Gap Period constitutes a substantial anomaly, seemingly at odds with Congress's intent, because although a creditor has a remedy against a dishonest debtor where knowledge of post-petition fraud arises either before the Discharge Bar Date, *see* Fed.R.Bankr.P. 4004, or after the discharge has been granted, *see* 11 U.S.C. § 727(d)(1), a creditor has no remedy if his or her knowledge of the debtor's fraud arose during the Gap Period. Thus, in recognition of the undesirability of depriving a creditor of a remedy through sheer fortuity, "[r]ule 4004(c) requires that the chapter 7 discharge be entered forthwith as soon as the time for objecting to the discharge ... has expired." 8 Collier on Bankruptcy ¶ 4004.05[1], at 4004–17 (15th ed. May 1996

Supp.). Further, "[t]he language of Rule 4004(c) does not permit the court to delay granting the discharge for any reason not set forth in the rule." *Id.* at 4004–18.

C. *The Necessity of Construing the Intent of Congress in Enacting 11 U.S.C. § 727(d)(1): Did Citibank Possess Constructive Knowledge of the Alleged Fraud Prior to the Discharge Bar Date of September 10, 1991?*

■ Discovery of fraud occurs when one "obtains actual knowledge of the facts giving rise to the action or notice of the facts, which in the exercise of reasonable diligence, would have led to actual knowledge." *Kahn v. Kohlberg, Kravis, Roberts & Co.,* 970 F.2d 1030, 1042 (2d Cir.1992), *cert. denied,* 506 U.S. 986, 113 S.Ct. 494, 121 L.Ed.2d 432 (1992); *see Menowitz v. Brown,* 991 F.2d 36, 41 (2d Cir.1993). In other words, knowledge of fraud can be actual or constructive. In the context of determining whether, for purposes of 11 U.S.C. § 727(d)(1), a creditor obtained knowledge of a post-petition fraud prior to the debtor's discharge, the weight of authority imposes a duty upon the creditor to exercise "diligence in discovering facts which could result in the denial of a debtor's discharge...." *In re George,* 179 B.R. at 23.

In the underlying proceeding, Judge Holland did not address whether Citibank possessed constructive knowledge of Emery's alleged fraud *prior to the Discharge Bar Date.* Instead, Judge Holland concluded that Citibank was placed on notice of sufficient facts to warrant, through the exercise of due diligence, a request for an extension of time to the Discharge Bar Date. Because this Court is unable to conclude as a matter of law, based upon its review of the record, that Citibank possessed constructive knowledge of fraud prior to the Discharge Bar Date, it therefore becomes necessary for the Court to analyze the significance of the Gap

---

4. The Court notes that the Bankruptcy Rules are not promulgated under the Rules Enabling Act. Rather, the Supreme Court derives its authority to promulgate rules for the bankruptcy courts under 28 U.S.C. § 2075 which, unlike the Rules Enabling Act, contains no language providing that bankruptcy rules supersede conflicting prior statutes. *Compare* 28 U.S.C. § 2072(b) *with* 28 U.S.C. § 2075; *see In re Dombroff,* 192 B.R. 615, 621 (S.D.N.Y.1996). Notwithstanding this distinction, as will be further discussed, the Court agrees with the weight of authority that regards the interaction between 11 U.S.C. § 727(d) and Fed.R.Bankr.P. 4004 to set forth a comprehensive scheme, and finds that the failure to accord consideration to Rule 4004 in the circumstances of the present appeal would frustrate Congress's intent in enacting 11 U.S.C. § 727(d).

Period, and whether it leads to a result contrary to Congress's intent in enacting 11 U.S.C. § 727(d)(1).

### D. *Application of the Plain Meaning Rule to 11 U.S.C. § 727(d)(1) in Light of the Gap Period*

In the underlying case, Judge Holland found that Citibank possessed evidence of fraud as of November 18, 1991, eleven days prior to the date when the Bankruptcy Court certified Emery's discharge. *In re Emery*, 170 B.R. at 784. The Court agrees with this determination of the Bankruptcy Court. The record reveals that prior to the Discharge Date, Citibank conducted, on November 18, 1991, a 2004 examination of Emery during which its suspicion of fraud was confirmed. *See* R. 171–505; Second Am.Compl. ¶ 79 ("The Debtor's 2004 Examination and Citibank's discovery of the 1989 Affidavits after the Discharge Bar Date, while investigating Florin Vasilescu, *confirmed that Citibank had grounds for objecting to Discharge and Dischargeability . . . .*") (emphasis added). Thus, upon viewing these facts in the light most favorable to Citibank, the Bankruptcy Court properly concluded, as a matter of law, that Citibank possessed knowledge of Emery's alleged fraud in obtaining his discharge prior to the Discharge Date of November 29, 1991.

■■■■ According to the literal language of 11 U.S.C. § 727(d)(1), once it is established that a creditor possessed knowledge of fraud prior to the Discharge Date, revocation of the debtor's discharge is precluded. *See id.* A court must interpret a statute in accordance with its plain meaning if the language of the statute is clear and unambiguous, and where a literal interpretation of the statute would not produce a result demonstrably at odds with Congress's intent. *See United States v. Ron Pair Enters.*, 489 U.S. 235, 242, 109 S.Ct. 1026, 1031, 103 L.Ed.2d 290 (1989). As the Bankruptcy Court noted in its decision, the plain meaning rule does not apply where the literal language of the statute will lead to an absurd result that could not have been intended by its drafters. *In re Emery*, 170 B.R. at 785; *see Ron Pair Enters.*, 489 U.S. at 242–43, 109 S.Ct. at 1031. Such

determination, in turn, requires consideration of the statutory scheme that Congress has established. *See Ron Pair Enters.*, 489 U.S. at 243, 109 S.Ct. at 1031. As the ensuing discussion explains, this Court regards a literal application of 11 U.S.C. § 727(d)(1) to conflict with the mandate of Fed.R.Bankr.P. 4004(c) that "the court *shall forthwith* grant the discharge . . . ." Fed.R.Bankr.P. 4004(c) (emphasis added).

■■■■ Congress's objective in enacting "bankruptcy law is to provide a fresh start for an honest but unfortunate debtor . . . ." *In re Scarpinito*, 196 B.R. at 261. However, this policy is tempered in cases where a dishonest debtor attempts to defraud creditors through his post-petition conduct. *See id.*

A 60–day window exists between the initial 341 meeting and the Discharge Bar Date for a creditor to file a complaint objecting to the debtor's discharge under 11 U.S.C. § 727(a). *See* Fed.R.Bankr.P. 4004(a). Upon the expiration of this period, "the court shall forthwith grant the discharge . . . ." Fed.R.Bankr.P. 4004(c). In addition, Congress allows a creditor to request a revocation of a discharge within one year after such discharge is granted. *See* 11 U.S.C. § 727(e)(1). Such application will be granted where a discharge was obtained through the debtor's post-petition fraud, and the creditor did not know of such fraud until after the discharge was granted. *See* 11 U.S.C. § 727(d)(1). Thus, reading 11 U.S.C. § 727 in tandem with Fed.R.Bankr.P. 4004, a strong inference can be drawn that Congress intended to provide a remedy to a creditor who learns of the debtor's fraud either before or after the debtor's discharge.

On the other hand, there is little to suggest that Congress intended to extend any special protection to a debtor whose discharge was procured by fraud which was discovered by a creditor during the Gap Period. *See In re White*, 133 B.R. 206, 208–09 (Bankr.S.D.Ind.1990). "Clearly Congress intended that a fraudulently procured discharge would not be protected by the running of the short time limit for filing complaints objecting to discharge set by Rule 4004, if the fraud was not apparent until

after the deadline had passed." *Id.* at 208–09.

If the discharge is granted immediately following the Discharge Bar Date, Congress's intent is fulfilled. However, if the Discharge Date occurs a substantial period of time after the Discharge Bar Date, it creates a Gap Period during which time, under a literal interpretation of § 727(d), a diligent creditor who acts in good faith is left without a remedy. For instance, if the Bankruptcy Court had complied with the literal language of Fed.R.Bankr.P. 4004(c) and granted Emery's discharge forthwith (e.g., on the Discharge Bar Date of September 10, 1991), Citibank, which obtained knowledge of fraud as of November 18, 1991, would have a remedy against the debtor under § 727(d)(1). Further, Citibank would not be barred from moving to revoke Emery's discharge as a result of its failure to request an extension to the Discharge Bar Date. *See* Fed.R.Bankr.P. 4004(b).

At least one court that has considered whether the Gap Period warrants a departure from the plain meaning rule has refused to depart from the literal language of the statute. Specifically, in *In re Powell,* 113 B.R. 512 (W.D.Ark.1990), the district court declined to revoke a discharge pursuant to 11 U.S.C. § 727(d)(1) where the creditor learned of the fraud during the Gap Period. *See id.* at 513.

The weight of authority, however, has reached a contrary conclusion. *See In re Dietz,* 914 F.2d 161, 164 (9th Cir.1990); *In re Stevens,* 107 B.R. 702, 703 (9th Cir. BAP 1989) ("Debtors should not enjoy a period of immunity from conduct that would otherwise be actionable, simply because the Bankruptcy Rules do not address the situation that occurred here, where a discharge is not entered 'forthwith' upon the expiration of the Rule 4004(a) period."); *In re Ratka,* 133 B.R. 480, 483 (Bankr.ND.Iowa 1991); *In re White,* 133 B.R. at 208–09; *In re Meo,* 84 B.R. 24, 28 (Bankr.M.D.Pa.1988); *see also In re Mufti,* 61 B.R. 514, 519 (Bankr.C.D.Cal.1986) (suggesting in dictum that the problem of the Gap Period may be solved by tolling the

limitations period of Bankruptcy Rule 4004). Thus, for example, in *In re Dietz,* 914 F.2d 161 (9th Cir.1990), the Ninth Circuit Court of Appeals held that "[b]y deeming the discharge to have been entered on [the Discharge Bar Date], the [bankruptcy] court acted consistently with the spirit of the bankruptcy rules, which contemplate that discharge is effective immediately upon expiration of the 60–day period following the creditors' meeting, so long as no objections are filed." *Id.* at 164 (internal quotations omitted).

■ This Court agrees with the reasoning of the Ninth Circuit in *Dietz,* and the weight of authority, and holds that where a creditor obtains knowledge of an alleged fraud during the Gap Period, the Discharge Date will be imputed to have occurred on the same day as the Discharge Bar Date. To conclude otherwise would allow a dishonest debtor to get away with his or her postpetition fraud in securing a discharge simply by placing the creditors on notice of such fraud after the Discharge Bar Date and prior to the Discharge Date. It further would deprive a creditor who obtains knowledge of a fraud following the Discharge Bar Date of a remedy, thereby frustrating Congress's intent in enacting 11 U.S.C. § 727(d)(1), when applied against the backdrop of Fed.R.Bankr.P. 4004. The fact that the Bankruptcy Court determined that a reasonably prudent person would have requested an extension to the Discharge Bar Date does not disturb this conclusion because Judge Holland did *not* find that Citibank was placed on constructive notice of fraud prior to the Discharge Bar Date. Thus, to prevent a result demonstrably at odds with Congress's intent, *see Ron Pair Enters.,* 489 U.S. at 242, 109 S.Ct. at 1031, this Court imputes the Discharge Date to have occurred on September 10, 1991. Because the Bankruptcy Court determined that Citibank obtained knowledge of Emery's alleged fraud on November 18, 1991, such knowledge shall be considered as arising subsequent to the debtor's discharge, and therefore in compliance with 11 U.S.C. § 727(d)(1).[5] Accordingly, the Bank-

**5.** It follows that a corresponding adjustment should be made to the date that the creditor

ruptcy Court's dismissal of Citibank's complaint must be reversed.

### CONCLUSION

For the foregoing reasons, the Bankruptcy Court's order dismissing Citibank's second amended complaint is REVERSED and this case is REMANDED for further proceedings consistent with this Opinion.

SO ORDERED.

commenced the adversary proceeding so as to prevent a creditor, who commenced said adversary proceeding within one year of the nominal date of discharge, from being prejudiced through the absence of clarity in the law.