**In re Bruce and Paula BARR, Debtors.**

**Keith and Sue REZIN, Plaintiffs,**

**v.**

**Bruce and Paula BARR, Defendants.**

Bankruptcy No. 93 B 05857.
Adv. No. 95 A 00815.

United States Bankruptcy Court,
N.D. Illinois,
Eastern Division.

Nov. 7, 1995.

---

Donald V. O'Brien, Carol J. Coplan, O'Brien O'Rourke & Hogan, Chicago, IL, for Plaintiffs.

Leroy G. Inskeep, Philip V. Martino, Scott A. Semenek, Rudnick & Wolfe, Chicago, IL, for Defendants.

### MEMORANDUM OPINION

JACK B. SCHMETTERER, Bankruptcy Judge.

This Adversary proceeding relates to the joint bankruptcy case filed by the debtors, Bruce Barr and Paula Barr (collectively "Debtors," "Defendants" or "the Barrs"), under Chapter 7 of the Bankruptcy Code, 11 U.S.C. § 101 *et seq.*

Plaintiffs filed this Adversary complaint seeking to revoke Debtors' discharge under 11 U.S.C. § 727(d)(1). Defendants moved to dismiss the complaint under Fed.R.Bankr.P. 7012. For reasons stated below, the Motion is denied.

### BACKGROUND

#### Underlying State Court Litigation

This Adversary proceeding arises out of facts and circumstances surrounding pre-petition state court litigation between these same parties. In the spring of 1991, Dr. Keith Rezin and Sue Rezin, husband and wife, contracted to purchase a residential parcel of real estate located in Morris, Illinois, from Bruce Barr and his wife, Paula Barr. By separate agreement, the Barrs further agreed to perform certain construction work on the property.

It is alleged that the Barrs did not prepare the property in time for the sale closing and did not complete the agreed construction of the residence by the agreed date. However, because of the near state of completion, the availability of a temporary and conditional occupancy certificate issued by local authorities, and their pressing housing needs, the Rezins agreed to close their purchase, allegedly upon the Barrs' agreement to complete all remaining work and furnish an unrestricted occupancy certificate. Plaintiffs then took possession of the residence.

The Barrs did not complete construction of the home to the Rezins' satisfaction. As a result, the Rezins sued the Barrs in state court. They asserted many material deviations from the construction agreement and building code violations. Plaintiffs sought to rescind the contract and recover damages, both actual and punitive, on alleged grounds of consumer fraud, common law fraud, misrepresentation, and overreaching in the building and conveyance of residential property.

During pretrial preparation for the state court proceeding, and with the state court's approval, the parties agreed to submit to binding arbitration before an experienced local home builder to resolve some claims of deficits and omissions in construction of the residence. Trial was scheduled in state court for mid-to-late March 1993 on all remaining issues not submitted for arbitration.

In December 1992, the arbitrator resolved some of the claims and awarded Plaintiffs roughly $90,000.00 to bring their residence into compliance with the construction agreement and applicable building codes. The Barrs refused to satisfy that award, so Plaintiffs filed a motion in state court for entry of judgment on the arbitration award.

#### Debtors' Bankruptcy Filing

On March 16, 1993, during pendency of Plaintiffs' motion in state court for entry of judgment on the arbitration award and several days prior to the trial scheduled there on the remaining issues not resolved by arbitration, the Barrs filed their bankruptcy petition under Chapter 7 of the Bankruptcy

Code. Debtors listed Plaintiffs on their bankruptcy schedules as unsecured creditors holding claims for an unspecified amount. The bankruptcy proceeding was assigned to Bankruptcy Judge Squires of this Court.

### Relevant Proceedings Before Bankruptcy Judge Squires

The Rezins filed an Adversary case against the Barrs to bar dischargeability of the debt asserted to be due them under 11 U.S.C. § 523(a) and also to bar the bankruptcy discharge under 11 U.S.C. § 727.

On March 15, 1994, Judge Squires issued a final pretrial order in that Adversary case, setting both counts for trial the week of October 31 through November 1, 1994. The parties were thereby ordered to file and exchange witness and exhibit lists and copies of exhibits at least fourteen days before the first scheduled hearing. They were further directed to submit and exchange proposed findings of fact and conclusions of law at least seven days before trial. The pretrial order expressly provided that failure to comply with those terms would result in appropriate sanctions.

Over the next six months, Plaintiffs' counsel engaged in extensive discovery. On September 27, 1994, he filed a motion to continue the trial. Judge Squires denied that motion for reasons stated from the bench on October 4, 1994.

On or about October 14, 1994, the parties began discussing possible settlement. Although there is some dispute as to the extent of their resulting agreement, both sides clearly agreed that the Rezins' claim should be further litigated before the state court in Grundy County, Illinois, and that both the bankruptcy proceeding and this Adversary case should therefore be dismissed. Plaintiffs contend that Debtors also agreed not to make Plaintiffs' claim the subject of discharge attempts in any subsequent bankruptcy case, but Debtors deny the existence of any such further agreement.

On Thursday, October 27, 1994, two business days before the trial before Judge Squires was scheduled to begin, Debtors filed their voluntary motion to dismiss both their related bankruptcy proceeding and the Adversary proceeding then pending, all pursuant to undisputed aspects of the agreement.

Neither party submitted or exchanged the requisite pretrial compliance, in recognition of their agreement to further litigate in state court. The parties further failed to notify Judge Squires of their agreement prior to the dates scheduled for trial on the matter, despite ample time to do so.

At the Court's morning motion call on October 31, 1994, several hours prior to the first scheduled trial hearing, the parties first alerted Judge Squires to their proposed settlement arrangement. He understandably felt obliged to take action in light of the parties' failure to file pretrial compliance or notify him of any agreed arrangement at an earlier date. Accordingly, by order entered that same date, he (1) barred both parties from entering any exhibits or introducing any witnesses at trial, and (2) dismissed the Adversary "without prejudice." Judge Squires indicated from the bench that, in dismissing the Adversary, the parties would then be free to proceed with their litigation in state court.[1]

On November 10, 1994, the Rezins appeared before Judge Squires and, without objection from the Barrs pursuant to their undisputed agreement, successfully moved to modify the stay in order to pursue their claim in state court. Again, Judge Squires indicated from the bench that the stay would be lifted to permit the parties to proceed

---

1. At the October 31, 1994, motion call, Judge Squires stated: "Gentlemen, if the parties want to go litigate this matter in State Court if they can't settle it out, I don't have any problem with that conceptually.... I am inclined ... to dismiss this adversary but without prejudice. That way if there are appropriate claims between the parties ... [they] could be liquidated and determined in State Court...." Oct. 31, 1994, Tr. at 9–10. "Accordingly, the courtroom deputy is going to prepare the appropriate minute order sanctioning both sides as outlined and dismissing the adversary proceeding without prejudice. That means if the bankruptcy is ultimately dismissed or if ... a motion is served out to lift the automatic stay so that the State Court proceedings can go forward earlier than that ... Dr. Rezin's claims can be adjudicated in the pending State Court action, which has been stayed by virtue of this bankruptcy." *Id.* at 13–14.

with their dispute in state court.[2] An order was entered to that effect on November 14, 1994. Motions were subsequently filed in the Circuit Court in Grundy County, Illinois, to reset trial in the state court proceeding.

At a scheduled hearing set on November 17, 1994, to consider Debtors' pending motion to dismiss their bankruptcy case, Plaintiffs questioned the motion to dismiss on grounds that there was nothing proposed in that Motion to bar Debtors from reseeking bankruptcy protection with respect to their claim. They expressed concern that, upon dismissal of the Chapter 7 proceeding, Debtors would hide or encumber assets otherwise subject to the Rezins' state-based claim and then refile bankruptcy to avoid satisfying the impending state court judgment. Plaintiffs' counsel thought that Debtors had agreed not to attempt to discharge their claim in a subsequent bankruptcy case and wanted words to that effect included in the dismissal order.

In response, Debtors' counsel withdrew their voluntary motion to dismiss the bankruptcy on December 5, 1994. At that time, Plaintiffs' counsel did not realize the import of that withdrawal of motion and refocused his efforts on the pending state court litigation. Plaintiffs have asserted through their counsel that, upon withdrawal of Debtors' motion to dismiss the bankruptcy proceedings, they expected an opportunity to litigate their claims in state court while the bankruptcy continued. However, by permitting Debtors' bankruptcy to proceed after their Adversary case was dismissed and without documented proof that Debtors agreed not to reseek bankruptcy protection from their claim, Plaintiffs were exposed to the risk that their claim would be discharged in bankruptcy and that they would be permanently enjoined by the statutory injunction entered upon discharge from continuing with their state court litigation despite the modification

of stay. *See* 11 U.S.C. § 524(a)(2). That is exactly what transpired.

The discharge order was entered in Debtors' bankruptcy case two weeks later, on December 18, 1994. The Rezins, as scheduled creditors, were thereby permanently enjoined under § 524(a)(2) from continuing to litigate their underlying claim against Debtors in state court. The Rezins and their counsel received a copy of that order, to their dismay, four days later on December 22, 1994.

On December 28, 1994, in recognition of what had happened, Plaintiffs' counsel moved to vacate or modify the December 18 discharge order and to reinstate the earlier Adversary complaint which had been dismissed on October 31.

### Proceedings Before This Court

On January 1, 1995, Debtors' bankruptcy case was reassigned to the undersigned Judge along with other cases for docket management purposes.

Debtors moved on January 19, 1995, to strike the Rezins' motion to vacate or modify the discharge order. On February 10, 1995, an order was entered granting in part Debtors' motion to strike, holding that the only appropriate manner in which revocation of Debtors' discharge could be sought would be by filing a new adversary proceeding pursuant to Fed.R.Bankr.P. 7001(4) and asserting grounds under 11 U.S.C. § 727(d).[3] Pursuant to Memorandum Opinion, the Adversary case was reinstated as to the count under § 523, but not so as to the count under § 727. *See Rezin v. Barr (In re Barr),* 183 B.R. 531 (Bankr.N.D.Ill.1995).

On July 18, 1995, Plaintiffs initiated the instant Adversary case. Plaintiffs sued under 11 U.S.C. § 727(d)(1), asking this Court to revoke Debtors' discharge. In their complaint, amended after this Court struck origi-

---

**2.** On November 25, 1994, Judge Squires stated from the bench: "[T]his motion [to lift the automatic stay] will be allowed so that the parties, if they can't settle, can litigate in the pre-petition existing state court litigation to their hearts' content." Nov. 25, 1994, Tr. at 2–3.

**3.** On April 17, 1995, this Court held a status conference in Debtors' bankruptcy case. By pre-

trial order entered that date, this Court reinstated this Adversary proceeding and vacated the prior dismissal as to Count II under 11 U.S.C. § 523(a), but denied the Rezins' objection to discharge in Count I under 11 U.S.C. § 727 and denied their motion to modify Debtors' discharge order. Trial was set on all issues presented in Count II.

nal paragraphs 13–15, Plaintiffs seek to revoke the Bankruptcy Discharge Order entered on or about December 18, 1994. (Amended Complaint ¶ 9). Plaintiffs argue, referring to the earlier opinion at 183 B.R. 5317, that, since "[t]he misconduct of the defendants actionable under Fed.R.Civ.P. 60(b)(3) was found to be 'established' by the court" for purposes of reinstating Plaintiff's original Adversary Complaint as to the count under 11 U.S.C. § 523(a), "[t]he same misconduct was a procuring cause of the discharge order." (Amended Complaint ¶ 10). Plaintiffs further argue that they were not aware of the acts said to constitute misconduct until after entry of the discharge order. (Amended Complaint ¶ 11).

### Procedural Standards for Motions to Dismiss

■ Defendants' Motion is brought under Fed.R.Bankr.P. 7012. For Defendants to prevail on their Motion to Dismiss, it must clearly appear from the pleadings that the Plaintiffs can prove no set of facts in support of their claims which would entitle them to relief. *McKown v. Dun & Bradstreet, Inc.,* 744 F.Supp. 1046, 1047 (D.Kan.1990) *citing Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). The Court must consider both pleaded facts and reasonable inferences drawn from pleaded facts in a light most favorable to Plaintiff when reviewing the Defendants' Motion to Dismiss. *Ed Miniat, Inc. v. Globe Life Ins. Group, Inc.,* 805 F.2d 732, 733 (7th Cir.1986).

■ Under federal "notice" pleading requirements, pleadings need contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R.Civ.P. 8(a) (as made applicable to this Adversary proceeding by Fed.R.Bankr.P. 7008); *See Ricketts v. Midwest Nat'l Bank,* 874 F.2d 1177, 1183 (7th Cir.1989). "Notice" pleading merely requires that plaintiff give notice to defendant of the theory behind claims alleged and the basic facts supporting those allegations. *Maclin v. Paulson,* 627 F.2d 83, 86 (7th Cir.1980). Federal pleadings should therefore be liberally construed. *See Sutliff, Inc. v. Donovan Cos.,* 727 F.2d 648, 653 (7th Cir.1984). So long as fair notice has been given and the court can glean an actionable claim from the complaint, the court must entertain the party's case. *American Nurses' Association v. Illinois,* 783 F.2d 716, 723 (7th Cir.1986). "A complaint under Rule 8 limins the claim; details of both fact and law come later, in other documents." *Bartholet v. Reishauer A.G.,* 953 F.2d 1073, 1078 (7th Cir.1992).

■ When a party alleges fraudulent activity in its federal pleadings, however, "the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R.Civ.P. 9(b) (as made applicable by Fed. R.Bankr.P. 7009). Rule 9(b) should nevertheless still be read in conjunction with Rule 8(a). *People v. Volpert (In re Volpert),* 175 B.R. 247, 258 (Bankr.N.D.Ill.1995) (Schmetterer, J.). Thus, it is not necessary that a plaintiff plead each element of fraud, so long as the circumstances constituting fraud have adequately been set forth. *See Midwest Grinding, Inc. v. Spitz,* 976 F.2d 1016, 1020 (7th Cir.1992).

■ When alleging fraud in a complaint, it is only necessary to set forth the basic outline of fraud and to indicate who made the misrepresentations and the time and place the misrepresentations were made. *Vicom v. Harbridge Merchant Servs., Inc.,* 20 F.3d 771, 777 (7th Cir.1994) *(quoting Bankers Trust Co. v. Old Republic Ins. Co.,* 959 F.2d 677, 683 (7th Cir.1992)) (Rule 9(b) requires the plaintiff to state: "the identity of the person who made the misrepresentation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff."); *DiLeo v. Ernst & Young,* 901 F.2d 624, 627 (7th Cir.1990) (Rule 9(b) "particularity" means "the who, what, when, where and how: the first paragraph of any newspaper story"); *see also In re Janikowski,* 60 B.R. 784, 790 (Bankr.N.D.Ill.1986) (Schmetterer, J.) (and cases cited). However, mere conclusory allegations without a description of the underlying fraudulent conduct will not satisfy the requirements of Rule 9(b) and may warrant dismissal. *Veal v. First Am. Sav. Bank,* 914 F.2d 909, 913 (7th Cir.1990).

## Discussion

The issue raised by this Motion to Dismiss is whether Plaintiffs have pleaded fraud for purposes of § 727(d)(1) with enough specificity such that their Amended Complaint states a cause of action.

Section 727(d)(1) states:

(d) On request of the trustee, [or] a creditor, or the United States trustee, and after notice and a hearing, the court shall revoke a discharge granted under subsection (a) of this section if—

(1) such discharge was obtained through the fraud of the debtor, and the requesting party did not know of such fraud until after the granting of such discharge;

Defendants have two points:

1) They first argue that Plaintiffs' Amended Complaint insufficiently pleads fraud for purposes of § 727(d)(1). Defendants reach this conclusion by arguing that the Amended Complaint incorrectly equates "misconduct" found by the Court in its *Rezin v. Barr* opinion with the type of fraud necessary to state a claim pursuant to § 727(d)(1). Defendants claim that mere reference to the opinion is not enough to plead fraud under § 727(d)(1).

2) Defendants also argue that the Amended Complaint should be dismissed because under § 727(d)(1), the Plaintiffs must show that they were not aware of the fraud until discharge was granted. Defendants claim that Plaintiffs in fact knew of all the acts complained of. Defendants argue that "events" constituting the alleged fraud were thereby known to Plaintiffs before the discharge. Therefore, knowledge of these "events" imbued Plaintiffs with knowledge of Debtors' alleged fraud prior to entry of the Discharge Order. As a result, Defendants claim that Plaintiffs cannot state a cause of action.

### Plaintiffs Have Alleged Sufficient Facts to State A Cause of Action Under 11 U.S.C. § 727(d)(1)

The Plaintiffs made the following allegations of fact in paragraphs 8 through 10 of their Amended Complaint:

8. On June 27, 1995, a written opinion of the court comprehensively reviews the matters raised in plaintiff's Rule 60(b) petition and the answers filed by debtors. A copy of the opinion was attached hereto as Exhibit 1 to the original complaint by reference is made part hereof. As it appears from the opinion (page 16), the relief granted plaintiffs was predicated on Rule 60(b)(3) *Fraud, Misrepresentation, or Other Misconduct of Adverse Party.*

9. As a necessary consequence of the holding in the opinion of June 27, 1995, and its predecessor order, the plaintiffs seek a revocation of the discharge of December 18, 1994 pursuant to 11 U.S.C. § 727(d)(1).

10. The misconduct of defendants actionable under Fed.R.Civ.P. 60(b)(c) was found to be "established" by the court for purposes of reinstating plaintiffs' 1993 adversary count under 11 U.S.C. § 523(a). The same misconduct was a procuring cause of the discharge order of December 18, 1994, and resulted in the dismissal of Count I of the 1993 adversary complaint predicated on 11 U.S.C. § 727(a)(22)(4) and (5) objecting to discharge of defendants and constitutes grounds for relief under 11 U.S.C. § 727(d)(1).

Amended Complaint ¶¶ 13–15.

The Defendants argue that the above claims do not concern "facts" which state a claim for fraud under 11 U.S.C. § 727(d). However, the Amended Complaint, does plead fraud with enough specificity as required by *Bankers Trust Co. v. Old Republic Ins. Co.*, 959 F.2d 677, 683 (7th Cir.1992), and *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir.1990), to state a cause of action under 11 U.S.C. 727(d)(1). These opinions generally hold that the plaintiff need only plead the identity of the person who made the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff.

Plaintiffs have alleged such facts by pointing to the conduct of defendants that was outlined in the earlier opinion attached as an exhibit to the complaint. Plaintiffs thereby incorporate into the complaint the facts of the earlier opinion rendered by this Court a

few months ago. That opinion itself does possess enough information to state a claim under 11 U.S.C. § 727(d)(1). The opinion identified those who allegedly committed the fraud, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the Plaintiffs.

This conclusion is supported by the result in *Artinian v. Peli; In re Peli*, 31 B.R. 952, 954 (Bankr.E.D.N.Y.1983). In *Artinian*, the plaintiff was a creditor whose claim arose out of a tort injury inflicted by the debtor. The plaintiff had sued the plaintiff for the tort injury and settled the claim. According to the settlement, the debtor was to pay plaintiff $50.00 per week for twenty years. Subsequently, the defendant-debtor lost his job and filed for bankruptcy. The debtor was later discharged. The creditor filed a motion under 11 U.S.C. 727(d) to have the discharge revoked, claiming that prior to entering into the settlement agreement the debtor concealed the fact that he intended to get fired from his job, file bankruptcy, and have the debt discharged. Faced with a motion to dismiss for failure to state a cause of action under Fed.R.Bankr.P. 7012, the court dismissed the motion. In its opinion, the court stated that the plaintiff had met the relatively slight burden required to resist this type of motion. *Id.* (*citing Williams v. Wheeling Steel Corp.*, 266 F.Supp. 651 (D.C.W.Va. 1967). The court found that this "slight burden" was overcome because the creditor had pleaded that the discharge was obtained through fraud and that the creditor was not aware of this fraud prior to the discharge. *Id.* at 954.

In this case, Plaintiffs have likewise pleaded certain facts that could support a finding of fraud for purposes of 11 U.S.C. § 727(d)(1). It is true that the "misconduct" found in the earlier opinion incorporated by Plaintiffs into their Amended Complaint may not in the end be enough to fulfill the requirements of 11 U.S.C. § 727(d)(1). That issue, however, should be decided through a trial and not through this Motion to Dismiss.

The Defendants here are concerned that the earlier holding will somehow gain collateral effect in this proceeding if Plaintiffs are allowed to allege in their complaint that fraud under § 727(d)(1) is a necessary consequence of the earlier opinion at 183 B.R. 531, 539. (Defendant's Reply in Support of Motion to Dismiss, ¶¶ 6–12).

However, the issue regarding the effect that the earlier opinion may have in the present proceedings can be argued later. The issue now is whether the Plaintiffs have pleaded fraud under 11 U.S.C. § 727(d)(1) with enough specificity so that their Amended Complaint is sufficient to state a cause of action.

### Plaintiffs' Asserted Knowledge Prior to Discharge Was Not Necessarily Complete

██ Defendants also claim that Plaintiffs knew of any possible "fraud" before the discharge was granted. They argue that, since Plaintiff's counsel was present at the hearing regarding dismissal of the original Adversary case and since it was at this hearing that Defendants withdrew their request for dismissal of their bankruptcy, Plaintiffs must have known of the facts constituting asserted fraud before the discharge. However, this argument is not logically airtight. Plaintiffs knew from maintenance of the bankruptcy case that the Debtors might obtain a bankruptcy discharge, yet such knowledge would not necessarily imply that they knew that Defendants would actually do so. While Plaintiffs could have been aware of the injury that might be caused them from any possible discharge, that does not mean they necessarily knew in advance of the Debtors' intent to pursue and actually obtain their discharge in light of their agreement to dismiss the bankruptcy proceeding.

Defendants were not necessarily obligated to pursue the discharge of their case. The bankruptcy dismissal they actually agreed to would have maintained the status quo and allowed the state court litigation to proceed. It is not at all established by the mere reference to the complaint that Plaintiffs knew that Defendants would pursue and actually obtain the discharge in a case that they had agreed and promised to dismiss, particularly since the Plaintiff's Adversary effort to bar discharge had voluntarily been dismissed by them because of that promise and after the

state court litigation had resumed by agreement. Plaintiffs essentially contend that they were flim-flammed into abandoning their § 727 action because of Debtors' promise to dismiss the bankruptcy, a promise not kept. It is possible that all the facts in context could warrant revocation of the discharge, and it cannot be said at this stage that no state of facts could warrant relief.

For reasons stated, the Motion to Dismiss is hereby DENIED. Plaintiffs may proceed with their case.