**In re Bruce BARR and Paula Barr, Debtors.**

**Keith REZIN and Sue Rezin, Plaintiffs,**

**v.**

**Bruce BARR and Paula Barr, Defendants.**

**Bankruptcy No. 93 B 05857.**

**Adversary No. 95 A 00815.**

United States Bankruptcy Court, N.D. Illinois, Eastern Division.

March 27, 1997.

---

Donald V. O'Brien and Carol Coplan Babbit, O'Brien, O'Rourke & Hogan, Chicago, IL, for Plaintiffs.

Leroy G. Inskeep and David G. Lynch, Rudnick & Wolfe, Chicago, IL, for Defendants.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW ON COUNT I OF THE COMPLAINT TO REVOKE DISCHARGE

JACK B. SCHMETTERER, Bankruptcy Judge.

This cause was tried on Count I of this Adversary Complaint of Plaintiffs Keith and Sue Rezins' ("Plaintiffs" or "Rezins") seeking to revoke the discharge of Debtors Bruce and Paula Barr ("Debtors," "Defendants," or "Barrs"). This proceeding relates to the Debtors' bankruptcy case filed by them under Chapter 7 of the Bankruptcy Code in

which a discharge order was entered on their behalf.

This Adversary action was brought pursuant to § 727(d)(1) of the U.S. Bankruptcy Code, Title 11 U.S.C. (the "Code"). Plaintiffs allege that they were deprived of their day in court on the § 727(a) dischargeability issues earlier asserted by them through fraud or other misconduct of Defendants. Following trial and having considered the evidence and pleadings, the following Findings of Fact and Conclusions of Law are now made and entered:

### FINDINGS OF FACT

These same parties herein have litigated extensively in bankruptcy and have tried a number of issues. Extensive findings of fact have been made in connection with this litigation. *See Rezin v. Barr (In re Barr)*, 188 B.R. 565 (Bankr.N.D.Ill.1995) (hereinafter "Op."); *Rezin v. Barr (In re Barr)*, 194 B.R. 1009 (Bankr.N.D.Ill.1996); *Rezin v. Barr (In re Barr)*, 183 B.R. 531 (Bankr.N.D.Ill.1995). All such Findings of Fact are adopted herein by this reference and will be repeated only as necessary for clarity.

1. This Adversary proceeding arises out of facts and circumstances surrounding pre-petition state court litigation between these same parties. During pretrial preparation for the state court proceeding, and with the state court's approval, the parties agreed to submit to binding arbitration. In December 1992, the arbitrator resolved some of the claims and awarded Plaintiffs roughly $90,-000.00. The Barrs refused to satisfy that award, so Plaintiffs filed a motion in state court for entry of judgment on the arbitration award. *Op.*, 188 B.R. at 567.

2. On March 17, 1993, during pendency of Plaintiffs' motion in state court for entry of judgment on the arbitration award and several days prior to the trial scheduled there on remaining issues not resolved by arbitration, the Barrs filed their bankruptcy petition under Chapter 7 of the Bankruptcy Code. Debtors listed Plaintiffs on their bankruptcy schedules as unsecured creditors holding claims for an unspecified amount. The bankruptcy proceeding was assigned to Bankrupt-cy Judge Squires of this Court. *Op.*, 188 B.R. at 567–68.

3. On August 23, 1993, prior to this pending adversary proceeding, the Rezins filed a two-count adversary proceeding entitled *Dr. Keith Rezin and Susan Rezin v. Bruce Barr and Paula Barr*, Case No. 93 A 01069, which adversary alleged both § 523(a) and § 727(a) claims against the Barrs. Joint Pretrial ("JPT") ¶ 1; *Op.* at 568.

4. On March 15, 1994, Judge Squires issued a final pretrial order in that Adversary case, setting both counts for trial the week of October 31 through November 1, 1994. Defendants' Proposed Findings ¶ 2; *Op.*, 188 B.R. at 568. The order provided that the parties were to file and exchange witness and exhibit lists and copies of the proposed exhibits at least 14 days before trial and to submit and exchange proposed findings of fact and conclusions of law at least 7 days before trial. *Op.*, 188 B.R. at 568. The pretrial order expressly provided that failure to comply with those terms would result in appropriate sanctions. *Op.*, 188 B.R. at 568.

5. As of October 14, 1994, Plaintiffs were completing their trial preparation and the requirements of Judge Squires' pretrial order. More than fifteen hours had been expended by Plaintiff's counsel in the organization and listing of exhibits and witnesses. Preparation of findings of fact and conclusions of law were in progress.

6. Although Plaintiffs had engaged in extensive discovery and were near to completing their pre-trial compliance, neither party submitted or exchanged the requisite pretrial compliance. Defendants' Proposed Findings ¶ 4.

7. Plaintiffs contend in this Adversary proceeding that on the eve of the trial before Judge Squires they had an agreement with the Barrs that, in exchange for Plaintiffs dismissing the adversary case, Debtors would dismiss their bankruptcy proceeding ("dismissal agreement") and would also agree not to make Plaintiffs' claim the subject of any discharge in the future ("side agreement"). Defendants deny that they made the side agreement. Plaintiffs' Ex. 11; Plaintiffs' Ex. 12, p. 21.

8. On or about October 14, 1994, Donald V. O'Brien, lead counsel for the Rezins, was contacted by telephone by Mr. Leroy Inskeep, lead counsel for the Barrs. Mr. Inskeep advised Mr. O'Brien that the debtors did not wish to try the issues raised in the adversary before Judge Squires and wished to resolve the case without trial in the bankruptcy. JPT ¶ 3.

9. At the conclusion of this discussion, the parties agreed that counsel for Debtors would prepare the motion to dismiss and the relevant documents for dismissal of the Adversary proceeding then pending.

10. On October 27, 1994, a draft letter was prepared by Debtors' counsel, addressed to Judge Squires; it was delivered to counsel for the Rezins prior to submission to the court. Counsel for the Rezins disagreed with Debtors' counsel as to wording of the letter. JPT ¶ 6.

11. The draft letter as prepared acknowledged that the Rezins were prepared to proceed with the adversary proceeding. The draft letter also suggested that the parties had had discussions towards reaching some sort of settlement. It makes no mention of an agreement to waive discharge. Plaintiffs' Ex. 7.

12. The draft letter was never sent to Judge Squires and the parties did not notify Judge Squires that they would not be going forward with the trial until October 31, 1994, the date set for trial. JPT ¶ 7.

13. Judge Squires first learned of the parties' proposed settlement at the court's motion call on October 31, 1994. JPT ¶ 7. Judge Squires imposed sanctions against both parties for failure to comply with the pretrial order and dismissed the adversary proceeding "without prejudice." Defendants' Proposed Findings ¶ 6; Plaintiffs' Proposed Findings ¶¶ 3, 6(g).

14. On that morning, prior to arrival of Debtors' counsel in court, Plaintiffs' counsel informed Judge Squires that Debtors' counsel had agreed to terms of the proposed agreement. Plaintiffs' Ex. 4, pp. 2–3. However, when counsel for both parties were present before the court on that same morning, no mention of the side-agreement was made. Counsel for the Debtors did express willingness to dismiss the bankruptcy and discuss waiver of their discharge, *id.* at p. 5, but also specifically stated that he would have to confer with his clients as to the scope of any proposed waiver of discharge. *Id.* at p. 7.

15. During the course of trial in the pending Adversary proceeding, counsel for Plaintiffs in his testimony admitted that, during the settlement negotiations, Debtors' counsel stated that he would have to speak with Debtors before entering into any agreement to waive discharge. Defendants' Ex. 6, pp. 22–23, 24. Plaintiffs' counsel further admitted to his understanding that Debtors' counsel had not yet obtained Debtors' approval *for any such agreement.* Defendants' Ex. 6, p. 25.

16. On Thursday, October 27, 1994, two business days before the trial set before Judge Squires was scheduled to begin, Debtors filed their voluntary motion to dismiss both their related bankruptcy proceeding and the Adversary proceeding then pending pursuant to the parties' discussions. *Op.,* 188 B.R. at 568. The motion to dismiss the bankruptcy proceeding was set for hearing on November 17, 1994 (seventeen days after dismissal of the Adversary proceeding). Plaintiffs' Proposed Findings, ¶ 5. That motion to dismiss stated that the Barrs no longer sought to obtain a discharge pursuant to § 727. Defendants' Ex. 2.

17. On November 10, 1994, the Rezins appeared before Judge Squires and, without objection from the Barrs, pursuant to the parties' agreement, successfully moved to modify the stay in order to pursue their claim in state court. Plaintiffs' Proposed Findings ¶ 6(i). Judge Squires indicated from the bench that the stay would be lifted to permit the parties to proceed with their dispute in state court. *Op.,* 188 B.R. at 568–69. An order was entered to that effect on November 14, 1994. Motions were subsequently filed in the Circuit Court in Grundy County, Illinois, to reset trial in the state court proceeding. *Id.*

18. At the November 17, 1994, hearing on Debtors' pending motion to dismiss their

bankruptcy case, Plaintiffs objected to such dismissal and requested leave to file objections to the motion to dismiss. Plaintiffs' Proposed Findings, ¶ 6(j); Defendants' Proposed Findings ¶ 8. Plaintiffs expressed concern that, upon dismissal of the Chapter 7 proceeding, Debtors would hide or encumber assets otherwise subject to the Rezins' state-based claim and then refile bankruptcy to avoid satisfying the impending state court judgment. Plaintiffs' counsel thought that Debtors had agreed not to attempt to discharge their claim in a subsequent bankruptcy case and wanted words to that effect included in the dismissal order. *Op.,* 188 B.R. at 569. However, Plaintiffs did not argue the existence of the supposed side agreement at this time.

19. Plaintiffs filed an objection to Debtors' motion to dismiss their bankruptcy. This objection made no mention of Debtors' alleged agreement to waive their discharge in any future bankruptcy. Defendants' Ex. 3. Rezins' objection merely pointed out the harm they would suffer should the bankruptcy case be dismissed. *Id.* The hearing on Debtors' motion to dismiss was continued to December 5, 1994, upon which date the Debtors withdrew their motion to dismiss. Defendants' Proposed Findings, ¶¶ 9,10. Counsel for the Rezins was present in court when the motion to dismiss was withdrawn (Defendants' Ex. 5), but apparently did not realize at the time that with the Adversary proceeding gone, discharge would soon be entered in the bankruptcy case as a matter of course.

20. The discharge order was indeed entered in *Debtors' bankruptcy case two weeks later, on December 18, 1994. Op.,* 188 B.R. at 569.

21. On December 28, 1994, in belated recognition of what had happened, Plaintiffs' counsel moved to vacate or modify the December 18 discharge order and to reinstate the earlier Adversary complaint which had been dismissed on October 31. *Op.,* 188 B.R. at 569.

22. On January 1, 1995, Debtors' bankruptcy case was reassigned to the undersigned Judge along with other cases for docket management purposes. *Op.,* 188 B.R. at 569.

23. Because an Adversary proceeding is required to seek revocation of discharge, on July 18, 1995, Plaintiffs filed the instant Adversary case. Plaintiffs sued in Count I under 11 U.S.C. § 727(d)(1), asking this Court to revoke Debtors' discharge for having been obtained by asserted fraud. *Op.,* 188 B.R. at 569. Plaintiffs argue that the fraud constituting the § 727(d)(1) cause of action was Debtors' breach of the asserted side agreement by failing to dismiss the bankruptcy case with an order barring future discharge, with the result that Debtors received their discharge. September 12, 1996, Trial Transcript ("Tr."), pp 14–17.

24. During the course of the trial herein, counsel for Plaintiffs testified that they had entered into the side agreement with counsel for Debtors, but counsel for Debtors disputed that such agreement was ever entered into. Plaintiffs presented no evidence other than testimony to show that Debtors had agreed to "waiver" of any future discharge of Plaintiffs' claim. Tr. at 8.

25. Counsel for Plaintiffs admitted that he first learned of Debtors' failure to comply with the alleged agreement to dismiss the bankruptcy and waive discharge on Plaintiffs' claim sometime between October 31, 1994, and November 17, 1994. Tr. at 24.

26. Indeed, as stated, counsel for the Rezins was present in court on December 5, 1994, when the motion to dismiss the bankruptcy case was withdrawn. Counsel for the Plaintiffs admitted that the only thing he did not know until the discharge had been granted and entered on December 18, 1994, was the legal consequence of Debtors' asserted breach of the alleged side agreement. Tr. at 25.

27. The parties have stipulated herein that Plaintiffs stated a claim for relief to bar discharge under 11 U.S.C. § 727(a), and that at all times mentioned herein they had evidence to support such a claim by a preponderance of the evidence. In Count I, Defendants waived their right to present evidence in opposition to the § 727(a) action to bar discharge and waived any other defenses they may have had. Defendants further concede that should Plaintiffs succeed in their

action to revoke discharge, Defendants are not entitled to and will not seek a discharge. Sept. 10, 1996, Stipulation.

### CONCLUSIONS OF LAW

■ Section 727 of the Bankruptcy Code, which provides for the debtor's discharge, is "at the heart of the fresh start provisions of the bankruptcy law." HR Rep. No. 595, 95th Cong. 1st Sess. 384–385 (1977): S.Rep. No. 989, 95th Cong., 2d Sess. 98–99 (1978), U.S.Code Cong. & Admin.News 1978, 5787, pp. 5884, 5885, 6340, 6341. A discharge under § 727(a) discharges the debtor from all pre-petition debts regardless of whether a proof of claim was filed or whether the claim based on the debt was allowed. 11 U.S.C. § 727(b); HR Rep. No. 595, at 385; S. REP. No. 989, at 99. However, § 727(d) requires the court to revoke a debtor's discharge if the debtor obtained the discharge through fraud, acquired and concealed property of the estate, or refused to obey a court order. 11 U.S.C. § 727(d); HR Rep. No. 595, at 385; S. REP. No. 989, at 99. These are the only grounds for revocation of discharge; a court cannot revoke discharge on equitable grounds. *Ginsberg & Martin on Bankruptcy,* 11.04[B] (4th Ed.).

■ "Revocation of a discharge is a harsh measure and runs contrary to the general policy of the Bankruptcy Code of giving Chapter 7 debtors a 'fresh start.'" *In re Kaliana,* 202 B.R. 600, 603 (Bankr.N.D.Ill. 1996) (citations omitted). Thus, § 727(d) is construed strictly against the moving party and liberally in favor of the debtor. *Id.* Section 727(d)(1) provides in relevant part that:

> On request of the trustee, a creditor, or the United States trustee, and after notice and a hearing, the court shall revoke a discharge granted under subsection (a) of this section if such discharge was obtained through the fraud of the debtor, and the requesting party did not know of such fraud until after the granting of such discharge....

11 U.S.C. § 727(d)(1).

■ The moving party bears the burden of proving that the discharge was obtained through fraud and the moving party lacked knowledge of such fraud until after the discharge was granted. *Matter of Yonikus,* 974 F.2d 901, 904 (7th Cir.1992); *In re Jones,* 71 B.R. 682, 684 (S.D.Ill.1987).

■ Although authorities have split as to the burden of proof necessary to establish the elements of § 727(d), most recent decisions have found the preponderance of evidence standard applicable under § 523 should also apply to challenges under § 727. *Kaliana,* 202 B.R. at 603–04 (citing *Grogan v. Garner,* 498 U.S. 279, 286–87, 111 S.Ct. 654, 659–60, 112 L.Ed.2d 755 (1991)); *In re Emery,* 201 B.R. 37, 40–41 (E.D.N.Y.1996). That standard is the correct one to apply here.

### Fraud Was Not Proved

[7–11] First, the objector must prove that the Debtor's discharge was obtained by fraud which must be fraud in fact. *Id.* (citing *Lawrence Nat. Bank v. Edmonds (In re Edmonds),* 924 F.2d 176, 180 (10th Cir.1991); *Donovan v. LaPorta (In re LaPorta),* 26 B.R. 687, 692 (Bankr.N.D.Ill.1982)). Fraud in fact includes an intent to deceive. *Kaliana,* 202 B.R. at 604 (citing *Mazer v. Jones (In re Jones),* 178 B.R. 1, 3–4 (Bankr.D.N.M. 1995)). In addition, "the fraud must involve acts that would be grounds for denial of discharge if known prior to the granting of the discharge." *Kaliana,* 202 B.R. at 604 (citations omitted). The focus of § 727(d)(1) is fraud in the procurement of the discharge, not fraud with respect to the objecting creditor. *Id.* "The court can revoke a discharge only if the debtor would not have been discharged pursuant to § 727(a), absent newly discovered evidence." *In re Thomas,* 72 B.R. 223, 226 (Bankr.M.D.Ala.1987); *In re Shelton,* 58 B.R. 746, 748 (Bankr.N.D.Ill. 1986).

Although the parties have stipulated that Plaintiffs are in possession of sufficient evidence to prove debtor would not have been discharged had they pursued their original Adversary proceeding pursuant to § 727(a), Plaintiffs must still prove here that the Debtors' discharge was obtained by fraud.

Plaintiffs argue that Debtors defrauded them out of their cause of action by breaching an agreement to dismiss the bankruptcy without leave to seek a discharge of their claim in a subsequent bankruptcy. Thus, in order to show fraud on the Debtors' part, Plaintiffs must first show that the side agreement between the parties existed. Plaintiffs did not meet this burden.

As stated, Plaintiffs offered no documentary evidence of any kind establishing or corroborating existence of Debtors' alleged agreement not ever to seek a future discharge of the Plaintiffs' claim. Plaintiffs admitted that they have no such evidence. Tr. at 8. Rather, Plaintiffs offer only the testimony of their counsel as evidence of such an agreement. Plaintiffs also offered the deposition and trial testimony of Debtors' counsel in an attempt to show existence of that agreement. However the offered testimony established only that such a stipulation may have been discussed, but it was never agreed upon. As stated, Plaintiffs' counsel admitted that he understood Debtors' counsel would have to seek Debtors' permission prior to any permanent waiver of discharge.

Moreover, actions of Plaintiffs' counsel were not consistent with such an agreement. Although that counsel did inform Judge Squires that the parties agreed to waive their discharge, he did so outside the presence of Debtors' counsel. When both parties' counsel were subsequently before the court, Plaintiffs' counsel did not reiterate his understanding of the agreement for his opponent to hear. Further, both at the November 17, 1994, hearing and in Plaintiffs' written objection to Debtors' motion to dismiss the bankruptcy, Plaintiffs failed to argue that such dismissal was violating the asserted side agreement between the parties. Rather, Plaintiffs argued the detriment they would suffer should such an unconditional dismissal be entered. Plaintiffs did not argue that such a dismissal would violate the parties' alleged settlement agreement. Finally, there was no reference to such an agreement when Debtors' motion to dismiss their bankruptcy was withdrawn.

Thus, Plaintiffs have not shown by a preponderance of the evidence existence of the asserted side agreement, let alone Debtors' breach of such agreement by a preponderance of the evidence.

Moreover, it is unclear, even had there been a side agreement and breach of it, that such a breach would have been sufficient to constitute fraud in the procurement of a discharge for purposes of § 727(d)(1).

The opinion in *Thomas* determined that a debtor's default on a reaffirmation agreement was not fraud for purposes of § 727(d)(1). 72 B.R. 223. In *Thomas,* the creditor argued that the debtor, who signed a reaffirmation agreement with the creditor, "lulled" the creditor into dismissing the complaint objecting to discharge, and then defaulted on the agreement after the bar date leaving the creditor without a remedy. *Thomas,* 72 B.R. at 226. The court dismissed this argument as irrelevant. "Until the creditor had in hand an enforceable reaffirmation agreement which had survived the 60–day rescission period, the creditor had a choice (1) of not dismissing the complaint objecting to discharge or (2) of filing a timely complaint to determine dischargeability." *Thomas,* 72 B.R. at 227.

> If there is a legitimate objection to discharge or dischargeability, a judicial determination should be obtained that the discharge is denied or that the debt is in fact nondischargeable by litigation or by agreed order reviewed by the court. This approach best protects the interests of both debtors and creditors. *Id.*

Thus, until Plaintiffs had some sort of signed settlement agreement or order of dismissal entered that met their wishes, they should and could have proceeded with their Adversary trial before Judge Squires. They did not have to stop work on their pretrial compliance merely because the Debtors stated they would not proceed with that trial. Moreover, by failing to comply with the pretrial order, Plaintiffs put themselves at risk for sanctions. Plaintiffs' counsel testified that their pretrial compliance was almost complete. Thus, Plaintiffs could have completed their compliance and filed the necessary pre-trial papers. If the deadline for compliance had then passed, Plaintiffs could have come in before trial to request an exten-

sion of time to file their witness and exhibit lists, exhibits and proposed findings and conclusions. Plaintiffs did not do so. Rather they relied on some statements from Debtors' counsel that Debtors' counsel would check with Debtors as to whether they would permanently waive discharge on Plaintiffs' claim when the bankruptcy case was dismissed. Then, most unhappily, Plaintiffs' counsel objected to dismissal of the bankruptcy because it was not on terms they wanted. Debtors' counsel took advantage of that objection to withdraw their motion to dismiss the bankruptcy.

### Notice of the Asserted "Fraud"

Since Debtors had agreed to dismiss the bankruptcy, withdrawal of the dismissal motion breached the dismissal agreement and allowed the discharge to be entered. However, that event was known to Plaintiffs' counsel before the discharge was entered.

Plaintiffs' counsel were aware of Debtors' breach of the alleged side agreement on or before the November 17, 1994, hearing on the motion to dismiss, and certainly knew of the withdrawal of dismissal motion on December 5, two weeks prior to the entry of discharge.

 A party seeking revocation of a discharge must prove that it lacked knowledge of the alleged fraud prior to the granting of the discharge. "According to the literal language of 11 U.S.C. § 727(d)(1), once it is established that a creditor possessed knowledge of fraud prior to the Discharge Date, revocation of the debtor's discharge is precluded." *Emery,* 201 B.R. at 41. "If it were not for this restriction, a complaint for revocation would be equivalent to a retrial before appeal." 6 *Collier on Bankruptcy* ¶ 727.15[3], 15th Ed. revised. Plaintiffs argue that, even though they knew through their counsel of Debtors' pre-petition acts prior to entry of the discharge order, they were unaware of Debtors' intention to breach the alleged agreement and proceed to discharge. However, Plaintiffs' counsel admitted that he learned of Debtors' failure to. comply with the alleged side agreement sometime between October 31, 1994, and November 17, 1994. Tr. at 24. And one of Plaintiffs' counsel was present in court on the date Debtors withdrew their motion to voluntarily dismiss the bankruptcy case. The only thing such counsel did not know was the legal consequence under bankruptcy law and procedure. Plaintiffs' counsel testified that. he was unaware that the discharge would issue after dismissal of the Adversary Complaint objecting to discharge and dischargeability. Tr. at 25.

While § 727 provides for the granting of a discharge, Fed. R. Bankr.P. 4004(c) provides that, if there has been no complaint objecting to discharge filed by the discharge bar date, the court shall grant the debtor's discharge "forthwith." Fed. R. Bankr.P. 4004(c); *Emery,* 201 B.R. 37, 41 (E.D.N.Y.1996). "The statutory scheme established by 11 U.S.C. § 727(d)(1), viewed against the backdrop of Fed. R. Bankr.P. 4004, presupposes that a certificate of discharge will be immediately issued after the expiration of the Discharge Bar Date" (if no Adversary opposing discharge is pending). *Emery,* 201 B.R. at 41.

Under an adversarial system, Debtors' counsel had no obligation to warn Plaintiffs that dismissal of the old adversary proceeding and withdrawal of the motion to dismiss the bankruptcy would subject Plaintiffs to an almost immediate discharge of their claim. Therefore, when Plaintiffs objected to Debtors' dismissal and took no further action to monitor Debtors' bankruptcy case once the motion to dismiss was withdrawn, the discharge was entered. However, since Plaintiffs through their counsel had knowledge of all critical facts before the discharge entered, their case under § 727(d)(1) must fail.

### CONCLUSION

Thus, Plaintiffs failed to prove by a preponderance of the evidence all elements required for revocation of a discharge under 11 U.S.C. § 727(d)(1). Judgment will separately enter for Debtors on Count I of the Adversary Complaint.